EDWARD S. UNDERWOOD, trustee in bankruptcy, *vs.* LOUIS M. WINSLOW & another.

Essex. December 9, 1919. — January 9, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Insurance,* Fire. *Bankruptcy,* Preference.

While a trustee in bankruptcy, who has a right to have conveyed to him land and buildings which had been conveyed by the bankrupt to the vice president of a bank within four months before the adjudication of bankruptcy as a fraudulent preference of the bank as a creditor, has an insurable interest in such property, he has no right, if he does not insure and the buildings are destroyed by fire, to the proceeds of policies of insurance against loss by fire which the bank had caused to be placed upon the property at its expense and for its benefit alone.

The trustee in bankruptcy gained no rights in the proceeds of the policies above described from the fact that he told the bank's vice president, the holder of the legal title to the property, that the vice president must keep the property insured and that he should hold him "responsible for any loss or injury to that property or any loss of it;" that the vice president replied, "You needn't worry about that, the property is amply insured, . . . it is just as much for the benefit of the bank as it is for your benefit that the property should be kept insured," and that later in a letter to the bank's counsel, the trustee stated that, having discussed the matter with the referee in bankruptcy, he could see no reason for making an agreement, suggested by the bank's counsel, to reimburse the vice president of the bank if he paid the cost of insurance, and that he should "certainly endeavor to hold" the vice president "responsible if he neglects to keep the property insured and a loss results."

SUPPLEMENTAL BILL IN EQUITY, filed in the Superior Court on May 1, 1918, after the appeal from the final decree, but before the rescript, in *Underwood* v. *Winslow*, which was determined by this court and reported in 231 Mass. 595, alleging that, after the entry of that final decree, the buildings upon the land which was the subject of controversy in the suit had been destroyed by fire, that the loss was covered by policies of insurance placed upon the premises by the defendant Winslow with companies which were made defendants in the supplemental bill, that the loss had been adjusted at $5,000 and that the companies were about to pay that sum to Winslow, but that the "insurance money should be substituted for the said buildings and should be held subject to the final orders" of the court. The prayers of the supplemental bill were that the insurance companies be enjoined from paying the money to Winslow and that they be ordered to pay it to the plaintiff.

By an amendment to the supplemental bill, filed and allowed on March 27, 1919, there were added a paragraph setting forth the rescript which had issued in accordance with the decision reported in 231 Mass. 595, and a prayer that the defendant Winslow "be ordered to rebuild the ice houses destroyed . . . or pay to the plaintiff the fair value thereof."

The supplemental bill as amended was heard by *Wait*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence. Material facts and evidence are described in the opinion.

By order of the trial judge a final decree was entered directing the payment to the plaintiff of the amount received upon the policies less the amount of premiums paid by the bank for whose benefit Winslow had held the legal title to the property. The defendants appealed.

*R. L. Sisk*, (*W. O'Shea* with him,) for the defendants.

*H. R. Mayo*, for the plaintiff.

BRALEY, J. We treat the supplemental bill as amended as an original bill, and come to the merits of the questions raised by the record.

The plaintiff under the final decree was entitled, upon affirmance by a decree after rescript, to an immediate reconveyance of the real property which the bankrupt in fraud of creditors had conveyed to the defendant Winslow, who acted as the agent of the defendant

bank, a preferred creditor, for whose sole benefit he took and retained title. But no transfer as yet has been made, and, Winslow having insured the property in his own name, the cost of which was paid by the bank which had the beneficial interest, and the buildings having been totally destroyed by fire and the loss adjusted, the plaintiff seeks to obtain the proceeds which by stipulation of the parties is held by a depositary to abide the result of the litigation.

The plaintiff as well as Winslow, to whom hereafter we shall refer as the defendant, had an insurable interest in the property at the date of the policies and of the fire. *Fowle* v. *Springfield Fire & Marine Ins. Co.* 122 Mass. 191. *Wainer* v. *Milford Mutual Fire Ins. Co.* 153 Mass. 335, 341. *Insurance Co.* v. *Thompson,* 95 U. S. 547.

To maintain the bill the plaintiff, who did not insure, must show that in equity and good conscience the money belongs to him, or, in other words, that it was received to his use. *Foote* v. *Cotting,* 195 Mass. 55, 63. *Cole* v. *Bates,* 186 Mass. 584, 586. It was said by Morton, J., in *Harrison* v. *Pepper,* 166 Mass. 288, 289, where the questions were, whether the neglect by a tenant for life to insure was in the nature of voluntary or permissive waste, and the dwelling house which was insured by the tenant in his own name for his own benefit having been damaged by fire, whether the remainderman could in equity recover the sum received by the tenant, that "Each can insure his own interest, but, in the absence of any stipulation or agreement, neither has any claim upon the proceeds of the other's policy, any more than in the case of mortgagor and mortgagee, or lessor and lessee, or vendor and vendee. . . . The contract of insurance is a personal contract, and inures to the benefit of the party with whom it is made, and by whom the premiums are paid." It is a contract of indemnity against loss which does not run with the land, for the sum paid is in no proper or just sense the proceeds of the property. *King* v: *State Mutual Fire Ins. Co.* 7 Cush. 1.

The plaintiff contends and the judge has found, that in a conversation the plaintiff said to the defendant, he should hold him "responsible for any loss or injury to that property or any loss of it," and "furthermore, you must keep that property insured," to which the defendant replied, "You needn't worry about that, the property is amply insured, . . . it is just as much for the

benefit of the bank as it is for your benefit that the property should be kept insured, and it will be kept insured." But the evidence is reported, and on examination it is shown that this conversation is only part of the negotiations. The letter to counsel for the bank, which is subsequent to the conversation, unequivocally states the plaintiff's position, and is his final word. It reads in substance, that having discussed with the referee in bankruptcy the suggestions made by the bank's counsel, that in the event of the decree being affirmed on appeal, that "I, as trustee, will reimburse Mr. Winslow if he proceeds to pay . . . the cost of the insurance. . . . I wish to state that . . . I can see no reason for making any such agreement and . . . shall certainly endeavor to hold Mr. Winslow responsible if he neglects to keep the property insured and a loss results." The judge also found that while the bank paid for "and took out insurance in the name of Winslow after the decision and decree of the trial court," the president of the bank and its counsel "intended the insurance to be for the benefit of the bank solely, and that meant the plaintiff should have no advantage from it, though at the time they knew they had no valid claim to the property unless the decree were reversed."

The defendant and the bank sustained no fiduciary relations to the plaintiff. They were adversaries, each striving to hold the property. It apparently would have been for their mutual advantage to have come to some agreement whereby insurance could be effected, payable in case of loss as their respective interests might appear. The plaintiff however with a full understanding of the situation deemed it inadvisable to bear any part of the cost, and having refused to contribute, neither the defendant nor his principal is called upon to make him a donation.

It is manifest under our decisions that no valid and binding contract has been shown, and, the money received from the insurance not having taken the place of the property, the plaintiff has no equitable rights. *Harrison* v. *Pepper,* 166 Mass. 288, 289. *Boston Marine Ins. Co.* v. *Proctor,* 168 Mass. 498. *Brighton Packing Co.* v. *Butchers Slaughtering & Melting Association,* 211 Mass. 398. The decree for the plaintiff must be reversed, and a decree is to be entered dismissing the bill.

*Ordered accordingly.*