ELISHA E. CONVERSE *vs.* BOSTON SAFE DEPOSIT AND TRUST COMPANY & others, executors, & others.

Suffolk.   November 2, 29, 1943. — February 28, 1944.

Present: FIELD, C.J., LUMMUS, QUA, & RONAN, JJ.

*Real Property*, Life estate, Remainder. *Insurance*, Fire insurance: remainderman's interest, apportionment of proceeds. *Limitations, Statute of*. *Contract*, Implied.

Statement by RONAN, J., of the principles that policies of fire insurance are personal contracts of indemnity between the insured and the insurer; that the proceeds are not substituted for the property after its destruction or damage; that an insured who has procured the policy

at his own expense receives the proceeds for the benefit of himself and any other persons named therein as insured, to whom he is accountable in proportion to the values of their interests in the property.

One owning a remainder in real estate insured against fire by a life tenant at his own expense for the benefit of "devisees under" a will by which both the remainderman and the life tenant had acquired their titles was entitled after a loss to only such part of the proceeds of the policy as was proportionate to the value of his remainder.

Failure of one, who by devise had a remainder in real estate, to bring suit within the period of the statute of limitations against a life tenant under the same will whom he had permitted to collect and retain the entire proceeds of fire insurance placed by the life tenant upon the property for the benefit of "devisees under the will," barred the remainderman from recovering even the portion of the proceeds to which he was entitled.

BILL IN EQUITY, filed in the Superior Court on August 6, 1941, and afterwards amended.

The suit was heard by *Cabot*, J.

*C. F. Lovejoy*, for the defendants.

*C. Hamilton*, for the plaintiff.

RONAN, J. Mary D. Converse devised a homestead estate to her husband for life, and upon his death to her daughters, Mary Ida Converse (hereinafter called Mrs. Converse, she having married one of that surname,) and Frances Eugenie Leland, for their lives and upon the death of either of them to the survivor for life, and upon the death of the survivor to the oldest grandson of the testatrix then living and his heirs. Mary D. Converse died in 1903. She was survived by her husband, who died in 1904, by her two daughters, Mrs. Converse and Mrs. Leland, who died in 1940 and 1941 respectively, and by a son, Harry E. Converse, who died in 1920, leaving three sons, the oldest of whom is the plaintiff who was born in 1894. After the death of her father, Mrs. Converse continued in possession of the homestead in accordance with an arrangement with her sister, Mrs. Leland, by which Mrs. Converse was to pay the taxes, insurance premiums and all expenses in connection with the upkeep of the property. The homestead was so badly damaged by fire on April 2, 1931, that it was necessary to raze the portions left standing after the fire. It was never rebuilt. At the time of the fire, Mrs. Converse had obtained at her own expense eight insurance policies.

One policy was on the contents in the amount of $1,500, and another on the building in the amount of $2,000. She was the only party insured in these two policies. The present controversy does not concern these two policies. The remaining six policies covered the building in the aggregate amount of $28,000, and the insured in each of these six policies were described as the "Devisees under the will of Mary D. Converse." The amount of this insurance was in excess of the value of the life tenancies of Mrs. Converse and Mrs. Leland. The loss on the building was settled for $29,000. A check for $1,933.34 was given to Mrs. Converse in payment for the loss under her policy. Checks for the payment of the loss under the other six policies, amounting to $27,066.66, were made payable to the "Devisees under the will of Mary D. Converse." These checks were sent in May, 1931, to the plaintiff, a resident of California, who returned them after indorsing them. The proceeds of these policies were retained by Mrs. Converse, in accordance with an arrangement with Mrs. Leland, as a part of her general funds and not as a separate fund. None of this money was paid to Mrs. Leland, to the plaintiff or to any other devisee under the will of Mary D. Converse. After the plaintiff returned the indorsed checks, he never communicated with his aunt Mary Ida Converse with reference to the proceeds of these checks and made no demand for payment until shortly after the death of the last life tenant, Mrs. Leland, in 1941, when he requested the executors of the will of Mrs. Converse to pay him. He did not learn until after the death of Mrs. Leland that Mrs. Converse had not kept this insurance money segregated but had treated it as a part of her general funds. A final decree was entered ordering the executors to pay him the principal sum received by Mrs. Converse on these six policies less a proportionate part of the expense paid by Mrs. Converse for the services of an adjuster in settling the loss, together with interest from the death of Mrs. Leland. The executors of the will of Mrs. Converse appealed from this decree. The plaintiff also appealed from this decree ordering the bill dismissed as against the executors of the will of Mrs. Leland.

The case was submitted to the trial judge upon a statement of agreed facts. The plaintiff now claims that the letter sent to the plaintiff which accompanied the checks and requested him to indorse and return them, the letter thanking him for returning the checks, and a copy of the will of Mrs. Converse were immaterial, but it is not necessary to pass upon this question for, if they were disregarded, it would not affect the conclusion that must be reached upon the admitted facts. This court on appeal in equity from a final decree based upon an agreed statement of facts may draw the inferences of fact deemed by it to be proper, without regard to the inferences drawn by the court below. *Stuart* v. *Sargent*, 283 Mass. 536. *Palley* v. *Worcester County National Bank*, 290 Mass. 501.

The question here is whether the plaintiff is entitled to recover all or any portion of the proceeds of the six fire insurance policies. The bill of complaint is based on the theory that the proceeds of policies which were obtained not only for the benefit of the life tenants but also for the protection of the remainderman constituted a fund, the income from which belonged to the life tenants and the principal to the remainderman who became entitled to the payment of the principal upon the termination of the last life tenancy. In other words, the contention is that as between the life tenants and the remainderman the insurance money was substituted for the property.

Where, as here, there is nothing to show that Mrs. Converse was required by the terms of her mother's will creating her life estate or by any agreement with the plaintiff to obtain fire insurance in his behalf, she was not bound to obtain such insurance either for her own benefit or for that of the plaintiff. A life tenant or a remainderman may obtain insurance upon his own interest and for himself alone. A remainderman has no claim upon the proceeds of fire insurance received by a life tenant from insurance obtained by a life tenant who was under no obligation to him to carry insurance, where the policies were obtained by the life tenant in his own name, at his own expense and for his sole benefit. A remainderman has no interest in contracts of

insurance in which he was not a party and which were not obtained for his protection. The fact that the property was insured by the life tenant for its full value is not enough to show that he intended to cover the interest of the remainder-man. If a life tenant, who has insured for his own benefit, receives from the insurers more than the value of the life tenancy, that is a matter between the parties to the contracts of insurance and creates no claim in favor of the remainderman in the excess paid over the value of the life tenancy in the property. The underlying principle is that fire insurance policies are personal contracts providing for the payment of indemnity to the insured in case of loss, and the amount received does not stand for nor represent the property damaged or destroyed although the measure of indemnity depends upon the determination of the value of the interest of the insured in the property covered by the policies. In a word, the money received by a life tenant from his own contracts of insurance belongs to him, and he cannot be compelled to hold the money as though it were substituted for the property or as though it were the proceeds of the property. The law in this respect was settled by *Harrison* v. *Pepper,* 166 Mass. 288, a decision which has been frequently cited and which is in accord with the great weight of authority. *Bell* v. *Barefield,* 219 Ala. 319. *Corder* v. *McDougall,* 216 Cal. 773. *Spalding* v. *Miller,* 103 Ky. 405. *King* v. *King,* 163 Miss. 584. *Addis* v. *Addis,* 14 N. Y. Sup. 657. *Gorman's Estate,* 321 Penn. St. 292. *Bennett* v. *Featherstone,* 110 Tenn. 27. *Thompson* v. *Gearheart,* 137 Va. 427. See *Dando* v. *Porter,* [1911] 2 Ch. 350. Compare *Crisp County Lumber Co.* v. *Bridges,* 187 Ga. 484; *Sampson* v. *Grogan,* 21 R. I. 174; *Green* v. *Green,* 50 S. C. 514.

We must determine whether any obligation was imposed upon Mrs. Converse in favor of the plaintiff by her collection and retention of the proceeds of the six policies. We need not decide whether at the time of the fire the plaintiff had a contingent interest in the homestead which did not vest until the death of the last life tenant, or had a vested interest which was subject to be divested if he died before the life tenancies had terminated, see *National Shawmut*

*Bank* v. *Joy, ante,* 457, for the plaintiff stood in such a relation to the property that its destruction or damage would cause him a loss, see *Womble* v. *Dubuque Fire & Marine Ins. Co.* 310 Mass. 142, 144, and the parties have agreed that at the time the policies were issued and when the fire occurred the plaintiff had an insurable interest. No one of the parties insured was specially named in the policies. They were designated as the "Devisees under the will of Mary D. Converse." The plaintiff was one of these devisees, and the defendants concede that he was one of the parties insured. It would seem to follow that the policies indemnified the plaintiff against a loss that he might sustain from damage by fire to the extent of his interest in the property covered by the policies. If a loss occurred, he was entitled to receive the proportion of the proceeds of the insurance that the amount of his loss bore to the total amount of the loss sustained by all parties whose interests in the property were covered by the policies. This was the measure of his financial interest in the amount of money paid by the companies in the adjustment of the loss, and upon the payment of the loss to Mrs. Converse, in 1931, she became indebted to him for the amount of his share. There is nothing in the agreed facts that would warrant an inference that the plaintiff made any agreement with her with reference to the disposition of the proceeds or any part of them. See *Old Colony Trust Co.* v. *Puritan Motors Corp.* 244 Mass. 259; *Commonwealth* v. *Snow,* 284 Mass. 426; *Povey* v. *Colonial Beacon Oil Co.* 294 Mass. 86. The record discloses no agreement or trust unless one is to be inferred from the facts stated in this opinion. See *Peck* v. *Scofield,* 186 Mass. 108; *Chace* v. *Gardner,* 228 Mass. 533; *Atkins* v. *Atkins,* 279 Mass. 1; *Levy* v. *Levy,* 309 Mass. 486.

Upon the agreed facts, there is nothing in the plaintiff's contention that the proceeds of the insurance were substituted for the property and that he had "a vested interest in a contingent right" to the entire proceeds. We think his only interest in the proceeds was the amount proportional to the loss he sustained at the time of the fire, and that he did not acquire any greater interest because ten years after

the fire he became the sole owner of the homestead or because the insurance was collected by a life tenant rather than by someone else. The fact that the life tenant and the remainderman are insured in a policy entitles each to the payment of indemnity in the case of loss but, in the absence of an agreement between them, does not substitute the indemnity so paid for the insured property or justify us in ignoring the distinction that has been frequently pointed out between the indemnity and the property. *King* v. *State Mutual Fire Ins. Co.* 7 Cush. 1. *Wilson* v. *Hill*, 3 Met. 66. *Lerow* v. *Wilmarth*, 9 Allen, 382. *International Trust Co.* v. *Boardman*, 149 Mass. 158. *Burlingame* v. *Goodspeed*, 153 Mass. 24. *Boston Marine Ins. Co.* v. *Proctor*, 168 Mass. 498. *Underwood* v. *Winslow*, 234 Mass. 550.

The value of the plaintiff's interest in the property at the time of the fire was capable of being fairly ascertained. In *Doyle* v. *American Fire Ins. Co.* 181 Mass. 139, it was held that a tenant by the curtesy initiate in his wife's land had an insurable interest and in case of loss the value of his interest could be estimated. See also *Alexander* v. *McPeck*, 189 Mass. 34; *Clarke* v. *Fay*, 205 Mass. 228; *Whiteside* v. *Merchants National Bank*, 284 Mass. 165.

The plaintiff was entitled to receive his share of the proceeds from his aunt. Upon the agreed facts she stood in no other relation to him than as a debtor for the amount of his share. The answer sets up the statute of limitations. The failure of the plaintiff to demand and enforce payment of his share from his aunt who lived for more than nine years after the receipt of the money bars him from recovery. No reason appears why an action for money had and received could not have been maintained if seasonably brought. *Looney* v. *Looney*, 116 Mass. 283. *Knowles* v. *Sullivan*, 182 Mass. 318. *Sherman* v. *Werby*, 280 Mass. 157. *Evatt* v. *Willard D. Martin, Inc.* 302 Mass. 414.

There was no error in dismissing the bill against the executors of the will of Mrs. Leland for she never received any of the insurance money. The final decree must be reversed and a decree entered dismissing the bill with costs.

*Ordered accordingly.*