**In re Matthew L. WIESNER, Debtor.**

**No. 00–46805(JBR).**

United States Bankruptcy Court,
D. Massachusetts.

Sept. 20, 2001.

Richard A. Sheils, Jr., Bowditch & Dewey, Worcester, MA, for Debtor/Administrator.

Mark S. Foss, MacCarthy, Pojani & Hurley, LLP, Worcester, MA, for Stephan M. Rodolakis, Chapter 7 Trustee.

## MEMORANDUM OF DECISION AND ORDER

JOEL B. ROSENTHAL, Bankruptcy Judge.

This case presents the question of who is entitled to insurance proceeds triggered by the postpetition destruction of the debtor's real estate and certain personal property. The matter came before the Court for consideration of a motion to dismiss the bankruptcy filed by Earl J. Wiesner (the "Administrator"), the debtor's father and the administrator of the debtor's probate estate, and a motion to approve a settlement between the Chapter 7 trustee (the "Trustee") and Hingham Mutual Fire Insurance Company (the "Insurer"). The Trustee objected to the dismissal of the bankruptcy while the Administrator objected to the settlement. The Court de-

nied the motion to dismiss,[1] and took the motion to approve the settlement under advisement. For the following reasons the Court hereby allows the motion to approve the settlement and overrules the Administrator's objection. The insurance proceeds are to be apportioned as set forth herein.

On December 29, 2000, Matthew L. Wiesner filed a voluntary Chapter 7 petition. Less than ten hours later the debtor died as a result of a fire that destroyed his residence and its contents. The debtor valued his real estate, located at 4 Maple Avenue, Upton, Massachusetts (the "Premises"), at $130,000 and claimed a $300,000 exemption pursuant to MASS. GEN. LAWS ch. 188 § 1A. The Premises secure a note in the approximate amount of $105,000.[2] In addition to the real estate, the debtor listed household goods and tools of $1,100 collectively. He claimed exemptions totaling $3,300 in these items.

Schedule B does not disclose the existence of any insurance policies and no policies were claimed as exempt.[3] At the time of the filing of the bankruptcy petition, however, the Premises and its contents were covered by a homeowner's insurance policy. Although the parties characterize it as a replacement value policy, the Trustee asserts, and the policy itself confirms, that it has the following relevant limitations on the amounts payable thereunder: (1) Dwelling–$125,000; (2) Personal Property–$62,500; and (3) Debris Removal–$6,250.

On May 4, 2001 the Trustee filed a Notice of Abandonment whereby the Trustee stated his intent to abandon "the bankruptcy estate's possessory and fee interest" in the Premises. The Notice further provides that "the Trustee is *not* abandoning any proceeds, product, or offspring from the property [sic] See 11 U.S.C. Section 541(a)(6). Nor is the Trustee abandoning the estate's interest in any insurance relating to the property." (Emphasis in the original). No objections or responses to the Notice were filed. Consequently the Premises have been abandoned. On May 15, 2001 the debtor's father was appointed the administrator of the debtor's probate estate.[4]

Subsequently the Trustee negotiated a settlement with the Insurer pursuant to

1. This Court ruled that the case would remain in bankruptcy as a deceased debtor is entitled to a bankruptcy discharge. "Death ... of a debtor shall not abate a liquidation case under Chapter 7 of the Code. The estate shall be administered and case concluded in the same manner, so far as possible, as though the death ... had not occurred...." Fed. R. Bankr.P. 1016. *See In re Peterson*, 897 F.2d 935, 938 (8th Cir.1990); *In re Gridley*, 131 B.R. 447, 450 (Bankr.D.S.D.1991); *In re Tikijian*, 76 B.R. 304, 305 (Bankr.S.D.N.Y.1987).

2. Schedule D lists the mortgagee of the Premises as Source One Mortgage. CitiMortgage, Inc. appears to be the current holder of the note and mortgage. CitiMortgage, Inc. has filed a motion for relief from stay and is listed on the policy as the mortgagee. The Court uses the term mortgagee to refer to whatever entity is the current holder of the note and mortgage.

3. Although Schedules B and C fail to reflect the debtor's interest in any insurance policies, Schedule J indicates that the monthly mortgage expense includes a property insurance premium.

4. The Court notes that, although there is an estate representative who stands in the shoes of the debtor and therefore may be examined on the debtor's behalf, *In re Lucio*, 251 B.R. 705, 709 (W.D.Tex.2000), no meeting of creditors pursuant to 11 U.S.C. § 361(a) has been convened. The Trustee moved for an extension of time to object to exemptions-a deadline triggered by the conclusion of the Section 341 meeting. Fed. R. Bankr.P. 4003. The Court granted the motion but urges the Trustee to convene a Section 341(a).

which the Insurer will pay the $125,000.00 policy limits for the Premises, $28,639.00, which the parties agree is the actual cash value of the personal property destroyed by the fire, and $6,250.00 for debris removal, all in full satisfaction of the Insurer's obligations under the policy. The Administrator objected to the settlement and argues that, pursuant to the debtor's exemptions or the Trustee's abandonment of the Premises as well as general principles of equity, all of the insurance proceeds are property of the probate estate, not the bankruptcy estate. Thus, believing he is entitled to the proceeds, the Administrator argues that he should be the party negotiating with the Insurer because the Trustee, having no real interest in the proceeds, has proposed a settlement that deprives the probate estate of additional insurance proceeds. The Administrator argues that the correct limitation on the amount to be paid on account of the fire is $156,249.98 [5] for the Premises and $43,000 for the personal property.[6]

## Discussion

### The insurance policy as property of the estate

Section 541(a) of the United States Bankruptcy Code provides in relevant part:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. . . .
>
> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate. . . .

■ Whether the homeowner's insurance policy is property of the estate under Section 541(a)(1) depends on whether the debtor had an interest in the policy at the time the bankruptcy was commenced. That question, in turn, depends upon Massachusetts law.[7] ["F]ire insurance policies are personal contracts providing for the payment of indemnity to the insured in case of loss, and the amount received does not stand for or represent the property damaged or destroyed although the measure of indemnity depends upon the value of the interest of the insured in the property covered by the policies." *Converse v. Boston Safe Deposit & Trust Co.*, 315 Mass. 544, 548, 53 N.E.2d 841 (1944). Thus there is no question that the insurance policy was and is property of the debtor's bankruptcy estate pursuant to Section 541(a)(1). *In re Hoffpauir*, 258

---

5. In his original objection to the settlement, the Administrator alleged that the Insurer was required to pay $140,363.90 for the Premises. In his supplemental opposition, the Administrator offered a different formula for calculating amount of the Insurer's liability and concluded he was entitled to $156,249.98. The latter figure comports with the figure set forth in the Administrator's opposition to CitiMortgage, Inc.'s motion for relief from the automatic stay.

6. The parties have agreed that the Insurer's maximum exposure for debris removal is $6,250. The Trustee appears to agree with the Administrator that this portion of the proceeds will be committed to clean-up costs.

7. Whether property is "property of the estate" is a federal analysis under Section 541 but as the Supreme Court has articulated, "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

B.R. 447, 454 (Bankr.D.Idaho 2001) and cases cited therein.

### The insurance proceeds as property of the estate

■■■ Determining that the insurance policy is a separate asset does not end the inquiry as to the entitlement to the proceeds of the policy. A bankruptcy estate can have no greater claim to the proceeds of property of the estate than the debtor would have outside of bankruptcy. *See In re Goodenow,* 157 B.R. 724, 725 (Bankr. D.Me.1993) ("[A]n estate's legal and equitable interests in property rise no higher than those of the debtor.") (citations omitted). As the *Goodenow* court recognized "a distinction must be made between the Policy itself and the proceeds payable thereunder, as ownership of one does not necessarily entail ownership of the other." *Id.*

In the instant case, the Trustee and the Administrator do not dispute that the mortgagee is entitled to that portion of the proceeds equal to the outstanding balance due on the note secured by the mortgage on the Premises. There will be a surplus over the payout figure, however, and therefore the question to be addressed is whether the Administrator, standing in the shoes of the debtor, or the Trustee, as the bankruptcy estate representative, is entitled to the surplus proceeds. The Administrator urges two alternative but related grounds to support his claim of entitlement to the surplus proceeds: first, the debtor's homestead exemption covers the insurance proceeds generated by the destruction of the Premises, or alternatively, the Trustee abandoned any claim to the surplus proceeds when he abandoned the Premises because the Premises and the insurance are inextricably intertwined. As a third reason the Administrator argues that it would be unfair if the insurance proceeds were not carved out of the bankruptcy estate. For the reasons set forth below, the Court concludes that the homestead exemption does not run to the surplus proceeds, the Trustee has not abandoned the right to these proceeds, and principles of fairness do not compel that the insurance proceeds be carved out of the estate.

### Do the insurance proceeds stand in place of the real estate?

■■■ The Administrator acknowledges that the general rule is that an insurance policy is property of the bankruptcy estate. He argues, however, that the exemption of the Premises and of certain of the contents withdrew that property from the bankruptcy estate. Once it was withdrawn, any proceeds related to the property are withdrawn as well. In support of his position the Administrator urges the Court to adopt the ruling of *Payne v. Wood,* 775 F.2d 202, 204 (7th Cir.1985), *cert. denied* 475 U.S. 1085, 106 S.Ct. 1466, 89 L.Ed.2d 722 (1986), in which the court concluded "[t]he fire turned physical assets of the estate into insurance proceeds; the trustee gets whatever those assets happen to be. Similarly, the [debtors] get whatever the proceeds happen to be for the property that was exempted." *Id.* The *Payne* court, however, ignored the fundamental concept that the insurance policy is an asset separate and distinct from the insured property. Although a majority of states find otherwise, *see* Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 66.53 (1997), under Massachusetts law the policy does not run with or stand in place of the property. *Converse,* 315 Mass. at 548, 53 N.E.2d 841. *See also Hoffpauir,* 258 B.R. at 455; *In re Simpson,* 238 B.R. 776, 779 (Bankr.S.D.Ill.1999) ("A debtor's right to insurance proceeds for damage to property derives, not from the property itself, but from a contract of indemnification between the debtor and the insurance company. The contract is personal to the debtor and

does not 'run with' the property or remain in effect once the property changes hands."); *In re Fox,* 80 B.R. 753 (Bankr. D.Pa.1987). Consequently the exemption of the Premises and the personal property removed only those items, not the policy insuring them or the proceeds of the policy.

### Did the trustee abandon the estate's right to the surplus proceeds?

 As an alternate theory for his claim to the surplus proceeds, the Administrator argues the Trustee has abandoned the right to proceeds. Once an asset is abandoned, it is removed from the bankruptcy estate and this removal is irrevocable. Therefore any intent to abandon an asset must be clear and unequivocal. *Billingham v. Wynn & Wynn, P.C. (In re Rothwell),* 159 B.R. 374, 377 (Bankr. D.Mass.1993).

 The only clear and unequivocal intent the Trustee expressed was to abandon the Premises. He expressly did not abandon the estate's rights to the insurance policy and the proceeds of the policy. Abandonment of the Premises alone does not encompass abandonment of the insurance any more than claiming in exemption in Premises is sufficient to exempt the insurance policy.

### Is it unfair to let the bankruptcy estate keep the insurance proceeds?

 The Administrator argues that principles of equity compel a ruling that the insurance proceeds are exempted from the bankruptcy estate. He claims that the Trustee should not "benefit" from the destruction of "the Debtor's bed, couch, pictures and other necessities of daily life." Any "benefit" the Trustee receives, however, derives not from the destruction of property but rather from the failure of the debtor or the Administrator standing in as

the debtor to list and exempt the insurance policy. Although this failure may have begun as nothing more than a simple oversight, especially when Schedule J indicates that insurance premiums were included in the debtor's monthly mortgage expense, the debtor has an obligation to complete his schedules accurately and completely and to amend those schedules when necessary. Moreover the Administrator did not offer any such amendments even though the policy and its proceeds became critical to this case within one day of the filing of the petition.

Finally, the Court is well aware of the tragic facts presented by this case. Those facts do not support exempting the proceeds as the Administrator advocates. Instead policy considerations will not be compromised by the Court's conclusions. The debtor is deceased; he cannot benefit from the fresh start bankruptcy was intended to provide, nor will the exempted assets give him the foundation upon which to build his start.

### Should the settlement agreement be approved?

 A settlement should be approved if it is in the best interest of creditors. In *Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir.1995), the court set out the four factors to be considered in deciding whether a settlement meets the best interest test. Those factors are: (1) the probability of success on the merits; (2) difficulties in collection; (3) complexity; and (4) the paramount interest of creditors and proper deference to their reasonable views. In applying those factors to the proposed settlement, the Court finds that the settlement is in the best interest of creditors as set forth below.

The Administrator asserts that recovery of only $125,000 for the Premises is well below what the Insurer is required to pay

under the policy. Assuming that the policy covers the replacement value of the dwelling,[8] the residence replacement cost endorsement expressly provides "We will pay no more than the actual cash value of the damage until actual repair or replacement is completed." The Administrator has not supplied any evidence that the residence was replaced. Indeed it is unlikely that the residence will be replaced in view of this Court's ruling that the proceeds of the policy belong to the bankruptcy estate.

A separate endorsement relating to personal property also limits the Insurer's obligation to the actual cash value of the property, namely $28,639.00 unless the personal property is actually repaired or replaced. In the instant case the property has not been replaced and thus the Insurer is not required to pay more than the agreed-upon cash value. That the Trustee was somehow obligated to offer the Administrator the opportunity to replace the items as the Administrator opines is simply incorrect.

The Insurer has agreed to its maximum obligation for debris removal. The parties have agreed that the $6,250 to be paid by the Insurer pursuant to debris removal coverage will to devoted to that purpose.

### Conclusion

For the foregoing reasons the objection to the settlement is overruled and the motion to approve the settlement is allowed. A separate order will enter.

IT IS SO ORDERED.

---

**8.** The endorsement entitled "guaranteed Replacement Cost Protection–Coverage A–Residence" contains the following notation at the top of the page: *"The following endorsement applies to this policy only if the form number appears on the Declarations Page."* (Emphasis in the original). The form number HM–500(9–96) is not listed on the Declarations Page provided.