**In re CHS ELECTRONICS, INC., Debtor.**

**No. 00–12731–BKC–RAM.**

United States Bankruptcy Court, S.D. Florida.

April 9, 2001.

Anthony J. Carriuolo, Berger Singerman, Fort Lauderdale, FL, for Cooper.

Ronald Neiwirth, Fowler White et al., Miami, FL, for lead plaintiffs.

*MEMORANDUM OPINION AND ORDER GRANTING SHAREHOLDERS RELIEF TO SETTLE CLASS ACTION LAWSUIT USING DIRECTORS AND OFFICERS LIABILITY INSURANCE PROCEEDS*

ROBERT A. MARK, Chief Judge.

The contested matter before the Court arises from the Motion for Approval to

Use Directors and Officers Insurance Policy Proceeds to Fund Proposed Class Action Settlement (the "Motion") filed by the individuals and entities more particularly described in the Motion as the Lead Plaintiffs in *In re CHS Electronics, Inc. Securities Litigation,* Case No. 99–8186–CIV–GOLD, a securities fraud class action currently pending in the United States District Court for the Southern District of Florida (the "district court") (the "Class Action Lawsuit").

The Motion seeks leave to utilize the proceeds (the "Proceeds") of two directors and officers insurance policies (the "Policies") purchased prepetition by CHS Electronics, Inc. ("CHS" or "Debtor") to fund the proposed settlement (the "Settlement") of the Class Action Lawsuit. The combined total amount of the Proceeds available under the two policies is $20,000,000, and the Settlement amount is approximately $11,750,000.

The Motion is opposed by Keith Cooper, the Liquidating Trustee under the liquidating plan of reorganization confirmed in this Chapter 11 case. Cooper objects procedurally, arguing that Fed.R.Bank.P. 9019, under which the Motion is brought, is not a proper vehicle for obtaining stay relief or declaratory relief with respect to rights in the Proceeds. That rule relates to bankruptcy court approval of settlements and, as Cooper correctly notes, it is the district court, not this Court, which must approve the Class Action Settlement. On that basis, Cooper urges the Court to deny the Motion.

Substantively, Cooper objects to the use of the Proceeds to fund the Settlement until the district court considers Cooper's potential claims against the Debtor's former officers and directors. These claims, if successful, could result in a judgment in excess of the remaining Proceeds if the Class Action Settlement is funded.

Following a hearing on December 7, 2000, this Court entered its December 27, 2000 Order Treating Motion to Approve Settlement as a Stay Relief Motion and Setting Further Hearing (the "December 27th Order"). The December 27th Order formalized the Court's finding that the Motion should be treated as a motion for stay relief or alternatively, for a determination that the automatic stay does not apply. The December 27th Order scheduled a final hearing for February 12, 2001.

By Order dated January 25, 2001, the Court granted in part and denied in part Cooper's Motion for Rehearing and/or Reconsideration of [the December 27th Order]. The January 25th Order granted rehearing in part and excused Cooper from that portion of the December 27th Order requiring him to attach a draft Complaint to the memorandum he was directed to file in opposition to the Motion. The Motion for Rehearing was denied to the extent that it sought rehearing of the Court's decision to (1) treat the Motion as a motion for stay relief; and (2) set a final hearing on the Motion for February 12, 2001. As stated in the January 25th Order, treating the motion as a motion for stay relief and for determining rights in the Proceeds does not prejudice Cooper or deny him due process. Cooper fully briefed the issue of whether the Proceeds are property of the estate and had ample time between the initial hearing on December 7, 2000 and the final hearing on February 12, 2001, to develop any alternative arguments for delaying the Class Action Settlement. Thus, Cooper's procedural objections are overruled.

The Court conducted a final hearing on the Motion on February 12, 2001. After consideration of the several memoranda filed by the parties and the arguments presented at the hearing, and upon review of the record, including the exhibits intro-

duced at the hearing by Cooper, the Court finds that the Motion should be granted. Neither the Bankruptcy Code nor applicable case law gives Cooper any right to delay the settlement of a lawsuit by third parties against a debtor's former officers and directors merely because Cooper also has presently unliquidated claims against those officers and directors.

### Factual Background

On April 7, 2000, the Debtor filed a voluntary petition for chapter 11 relief under Title 11 of the United States Code, thereby commencing this bankruptcy case. On May 12, 2000, the Debtor filed a Disclosure Statement and Amended Liquidating Plan of Liquidation, which were subsequently amended several times and eventually confirmed by order of the Court dated July 26, 2000.

The Lead Plaintiffs filed the Motion on September 22, 2000. On November 20, 2000, the parties executed a Stipulation of Uncontested Facts for purposes of this contested matter. The Stipulation was introduced into evidence at the February 12th hearing (Cooper's Ex. 4) and is therefore part of this record in its entirety. Portions of the Stipulation, quoted or paraphrased follow.

In December of 1998, CHS purchased a Management Assurance Policy from Royal Insurance Company of America ("Royal") (the "Royal Policy"). The Royal Policy provides $10,000,000 of directors and officers liability insurance coverage. Also, in December of 1998, CHS purchased a Directors and Officers Liability and Excess Policy from Zurich American Insurance Company ("Zurich") (the "Zurich Policy"). The Zurich Policy provides for an additional $10,000,000 of directors and officers liability insurance coverage and follows the form of the Royal Policy.

By Order dated June 23, 1999, the district court consolidated several securities fraud class actions against CHS and certain of its officers and directors into the Class Action Lawsuit. By that same Order, the district court appointed Warburg, Dillon, Read LLC; Thomas L. Day, Jr.; FHW Partnership Ltd., Moshe and Rivka Carmi; Peter Cavanaugh and AM Capital LLC, movants in the Motion before the Court, to act as Lead Plaintiffs.

Following mediation on November 17, 1999, the parties in the Class Action Lawsuit were able to reach an agreement in principle to settle the Class Action Lawsuit for $11.75 million in cash and 1.65 million shares of CHS common stock constituting the terms of the Settlement at issue. Counsel for CHS's insurance carriers (Royal and Zurich) were present at, and participated in, both mediation sessions.

The Policies provide three separate types of coverage: Coverage A is directors and officers coverage, which applies to claims against the Debtor's directors and officers. Coverage B is indemnification coverage. As applicable here, this coverage entitles the Debtor to be reimbursed under the Policies for fees and expenses it incurred in the defense of claims against its officers and directors. Coverage C is known as entity coverage. This covers CHS directly for certain claims asserted against the company. Although only Coverage C may be technically described in insurance parlance as "entity coverage," in this Opinion, the Court will refer to Coverages B and C as "Entity Coverage" since both of these coverages run in favor of the Debtor as distinct from Coverage A, which provides coverage solely for the directors and officers.

As described more fully below, Coverage C is inapplicable to the issues raised in the Motion since there are no remaining securities claims against the Debtor. With

respect to Coverage B, the Debtor has submitted claims of approximately $458,000 for fees and expenses incurred on behalf of the directors and officers which will result in a $258,000 indemnification claim under the Policies, after application of a $200,000 "retention" (essentially, a deductible). The primary focus of this contested matter are the Proceeds the Lead Plaintiffs seek to utilize under Coverage A, the coverage for claims against the directors and officers. If approved by the district court, the Settlement will exhaust the entire $10,000,000 in coverage under the Royal Policy and the first $1,750,000 of coverage under the Zurich Policy. Cooper argues that his unliquidated claims against the directors and officers exceed the $8,250,000 in coverage which will remain. As such, he argues that the Class Action Settlement should not be implemented until the district court has an opportunity to evaluate Cooper's claims and to protect his alleged right to share ratably with the Class Action Plaintiffs in the aggregate coverage available under the two policies.

The Debtor's April 7th bankruptcy petition stayed the Class Action Lawsuit against the Debtor and prevented the parties from concluding the Settlement in that court. Accordingly, no stipulation of settlement has been agreed to nor signed by the parties. However, once signed, the stipulation will be submitted to the district court for approval and the parties will seek authorization to mail notice thereof to all members of the Lead Plaintiffs' class. Upon final approval of the district court, the proceeds of the Settlement will be distributed to the class members.

At the December 7th initial hearing, the Lead Plaintiffs argued that Cooper could not prevail on any claims against the directors and officers, arguing, *inter alia,* that Cooper's claims are barred by the applicable statute of limitations. They ar-

gued further that, even if successful, the claims would not be covered because of an insured versus insured exclusion under the Policies. In its December 27, 2000 Order and in the January 25, 2001 Order granting rehearing in part, the Court required Cooper to address the merits of his claims.

Upon further consideration, the Court has determined that it is unnecessary to address the merits of Cooper's "D & O" claims to resolve the legal issues presented in the Motion. In fact, in reaching its decision, the Court is utilizing a motion to dismiss type standard, and is assuming (1) that Cooper has viable claims against the officers and directors which could result in judgments covered under the Policies; and (2) that the judgments could exceed the remaining Proceeds if the Class Action Settlement is approved and funded.

### *Discussion*

As described earlier, although the Policies provide Entity Coverage for the Debtor, the primary focus here is on the coverage provided for liability claims against the directors and officers. The first question is whether these liability proceeds are part of CHS' bankruptcy estate. Numerous bankruptcy cases hold that debtor owned insurance policies are property of the estate. *See A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1001 (4th Cir.1986) *citing In re Davis,* 730 F.2d 176, 185 (5th Cir.1984); *In re Johns–Manville Corp. et al.,* 40 B.R. 219, 230–31 (S.D.N.Y.1984).

However, in undertaking a property of the estate analysis under § 541 of the Bankruptcy Code, several courts have made a distinction between insurance *policies* owned by a debtor, and the *proceeds* payable under the policies. *See In re Goodenow,* 157 B.R. 724, 725 (Bankr.D.Me. 1993) (citing cases). Specifically, where the debtor owns the policies but has no

interest in the proceeds, the proceeds are not property of the estate. *See In the Matter of Edgeworth,* 993 F.2d 51, 56 (5th Cir.1993) ("When a payment by the insurer cannot inure to the debtor's pecuniary benefit, then that payment should neither enhance nor decrease the bankruptcy estate."); *In re First Central Financial Corp.,* 238 B.R. 9, 16 (Bankr.E.D.N.Y.1999) (discussing the goal of a D & O insurance policy as the "protection of individual directors and officers."). The Court adopts this reasoning, and thus, the fact that CHS obtained and owns the Policies here is not determinative. Instead, the Court must focus on who has rights against the Proceeds. *See First Central,* 238 B.R. at 17 ("[T]he question of whether the *proceeds* [of an insurance policy] are property of the estate must be analyzed in light of the facts of each case"*) (citing cases).*

Although there is no Eleventh Circuit authority directly on point, this Court fully agrees with and adopts the Fifth Circuit's holding in a case factually similar to the instant case, *In re Louisiana World Exposition, Inc.,* 832 F.2d 1391 (5th Cir.1987). *LWE* held that where the liability coverage covers the exposure of the directors and officers of the Debtor, and only is payable for the benefit of those directors and officers, it is they, and not the estate, that have a property interest in the liability proceeds for bankruptcy purposes. *See id.* at 1400. The *LWE* court specifically rejected the argument that the estate's status as a competing claimant creates any property interest in the proceeds covering the liability of the directors and officers:

> One having a pending, unadjudicated tort claim against another does not— *whether or not the claimant is bankrupt*—thereby have a property interest in liability insurance proceeds payable to the defendant.

832 F.2d at 1399 (emphasis added). Thus, the CHS estate has no property interest in the Proceeds available under Coverage A, the coverage for claims against the directors and officers. Indeed, despite lengthy briefing arguing the contrary, Cooper's counsel conceded this point at the February 12th hearing:

> I would agree with [the Court] that where there is no entity coverage, but merely that the estate may have a claim against those proceeds, that wouldn't fall within the penumbra of property of the estate.

Transcript of February 12, 2001 hearing, p. 23 (hereafter "Tr. p. ___").

In attempting to salvage some argument for treating the Proceeds as property of the estate, Cooper cites *In re Sacred Heart Hospital of Norristown,* 182 B.R. 413, 419–420 (Bankr.E.D.Pa.1995) which attempts to narrow the scope of *LWE,* and bring insurance proceeds into the estate where there is also coverage for liability claims against a debtor. The court in *Sacred Heart* reasoned that where payment to the directors and officers would diminish the pot of proceeds available to cover insured claims against the Debtor, the proceeds were property of the estate. *See id.* at 420.

In theory, the *Sacred Heart* analysis could have application here since the Policies include not only coverage for the officers and directors, but also Entity Coverage for certain securities and indemnification claims against the Debtor. Thus, the argument goes, the estate's rights under Entity Coverage provisions of the Policies could theoretically be impaired, if all of the Proceeds were disbursed to fund the Settlement of the Class Action Lawsuit

■ Under the facts presented here, however, Cooper's reference to Entity Coverage as a basis for treating the Pro-

ceeds as property of the estate has no practical application. Although a portion of the Proceeds could *conceivably* constitute property of the estate based on the Entity Coverage, there is *in actuality* no Entity Coverage issue here. First, with respect to Entity Coverage for securities claims against the Debtor, all of these claims have been discharged. Second, with respect to Entity Coverage for indemnification claims, counsel for Royal advised the Court at the February 12th hearing that the total amount of claims which the Debtor may have under the Policies' indemnification provisions will not exceed $258,000. Cooper did not disagree with this number. (Tr. p. 52). The Proceeds remaining after settlement of the Class Action Lawsuit will be approximately $8,750,000. To the limited extent that the Proceeds necessary to satisfy the Debtor's indemnification claims could be considered property of the estate, the automatic stay would apply. But, the Court can and will grant stay relief for cause under § 365(d)(1) of the Bankruptcy Code since the Class Action Settlement cannot possibly prejudice the Trustee's ability to assert and, if valid, collect his indemnification claims against the remaining Proceeds.[1]

The Entity Coverage claims are clearly not what is driving Cooper's vigorous attempts to stop the Class Action Settlement. Rather, Cooper is concerned with preserving sufficient insurance proceeds to satisfy his potential claims against the officers and directors. If the Court finds that the Proceeds are not property of the estate, Cooper asks this Court to enter relief without prejudice to Cooper asking United States District Judge Gold to delay approval of the Class Action Settlement until the district court evaluates the respective merits of the Class Action Lawsuit and Cooper's D & O claims.

In support of this abstention argument, Cooper relies primarily on a single decision, *In re Daisy Systems Securities Litigation*, 132 B.R. 752 (N.D.Ca.1991). Cooper cites *Daisy* for the proposition that a district court, not a bankruptcy court, should determine whether a trustee's contingent interest in proceeds of insurance policies should affect a district court settlement of third party claims to those same proceeds. Cooper argued that the ruling and analysis in *Daisy* applies here and therefore this Court should abstain from determining whether the Lead Plaintiffs may implement a settlement using the Proceeds. Instead, Cooper wants the district court to evaluate Cooper's claims and determine whether the settlement should be delayed.

*Daisy* does not hold that a trustee in bankruptcy may stop a settlement between third parties simply because the trustee has an independent claim against those parties. *Daisy* came before the district court on a motion to withdraw the reference with respect to a bankruptcy trustee's action for turnover of insurance proceeds. *See id.* at 754. If successful, the trustee's action would have stopped the settlement of a district court lawsuit.

Interestingly, in the first part of its analysis, the *Daisy* court followed *LWE* and found that the proceeds of the D & O policies were not property of the bankruptcy estate. *See id.* at 755. The district court then decided it was appropriate to withdraw the reference since, to the extent

---

1. Counsel for Royal announced at the February 12, 2001 hearing that Royal will pay the indemnification claim out of its $10,000,000 policy (Tr. p. 50). Movants acknowledged that the Settlement will be reduced by the amount of the indemnification claim minimizing, if not eliminating, Cooper's ability to rely on the indemnification claim in opposing the Motion.

that the trustee had any claim against the proceeds, the claim required analysis of bankruptcy law and securities law mandating that the reference be withdrawn under 28 U.S.C. § 157(d).

There is language in *Daisy* referring to the relative merits of the trustee's claims and the claims of the plaintiffs in the district court case. *Daisy* does not hold, however, that a bankruptcy trustee with a competing claim has any special rights that would justify a delay in settling earlier filed claims against a defendant.

Cooper's efforts to protect sufficient insurance proceeds to satisfy what he believes will be a large judgment against the Debtor's former officers and directors is certainly consistent with a general policy in favor of maximizing the size of a bankruptcy estate. Unfortunately, Cooper could not cite to, and this Court is unaware of, any Bankruptcy Code provision or case law that would give a bankruptcy trustee any different status than a non-bankruptcy plaintiff with an unliquidated claim against third-parties which may be covered by insurance proceeds about to be used to settle or satisfy a judgment entered in favor of other plaintiffs. *See In re Reliance Acceptance Group, Inc.*, 235 B.R. 548, 561–62 (D.Del.1999) (noting the lack of such a legal principle); *In re Phar–Mor Inc. Securities Litigation*, 164 B.R. 903, 905–06 (W.D.Pa.1994).

As discussed earlier, this contested matter does not involve insurance proceeds which are property of the estate. Rather, what is at issue are the rights of a bankruptcy trustee in his role as a competing claimant. Simply because Cooper is a trustee in bankruptcy does not arm him with super-plaintiff powers in causes of actions between third parties. As correctly noted by movant's counsel at the February 12th hearing, a trustee (or, like Cooper, a liquidating trustee under a plan) generally stands in the shoes of the debtor. A trustee has certain strong-arm powers under § 544 of the Bankruptcy Code which give the trustee the rights of hypothetical lien creditors and bona fide purchasers in actions to avoid certain transfers or liens. None of those powers are applicable here. Rather, as succinctly stated by movant's counsel, "the estate is merely another litigant wishing to pursue claims against the Ds and Os" (Tr. p. 45). Therefore, this Court rejects Cooper's contention that this Court should abstain from making any finding with respect to Cooper's rights to delay or object to use of the Proceeds in favor of consideration by the district court.[2]

In conclusion, the Proceeds which Cooper seeks to protect to satisfy his claims if he obtains a judgment against the officers and directors are not property of the estate. To the extent that a relatively small portion of those Proceeds subject to the indemnification claims are property of the estate, the Court, for cause, grants stay relief to the Lead Plaintiffs. The Lead Plaintiffs may proceed with their efforts to

---

**2.** After the February 12th hearing and bench ruling and prior to the entry of this Order, Cooper filed his Complaint for Declaratory Judgment and Further Relief Including Injunctive Relief in the United States District Court for the Southern District of Florida, Case # 01–01009–CIV–GOLD. The defendants in this action are the two insurance companies that issued the Policies, Royal and Zurich. This complaint is based, in part, on provisions in the Policies regarding related claims. Those issues were not raised in the contested matter in this Court and no opinion is expressed on the merits of those arguments. However, to the extent that Cooper is seeking relief based on any of the legal arguments presented here, the Court suggests that the appropriate remedy is to appeal this Order, not to relitigate the issues in an ancillary case filed in the district court.

obtain approval of the Settlement and the funding of the Settlement from the Proceeds.

For the foregoing reasons, it is—

ORDERED as follows:

1. The Lead Plaintiffs are granted full relief from the automatic stay to proceed with the Class Action Lawsuit and to utilize the Proceeds to fund any court approved settlement of that lawsuit.

2. Cooper's request for abstention is denied.

3. Cooper's objection to considering the Motion as a motion for stay relief is overruled.