**In re CYBERMEDICA, INC., Debtor.**

**No. 01–40659–JBR.**

United States Bankruptcy Court,
D. Massachusetts.

July 2, 2002.

Patrick P. Dinardo and Pamela Smith Holleman, Sullivan & Worcester, LLP, Boston, MA, for Robert N. Hotchkiss, M.D.

Cheryl B. Pinarchick, Robert L. Harris, Brown, Rudnick, Berlack, Israels, Boston, MA, for Alberto W. Vilar.

Guy Moss, Bingham Dana, LLP, Boston, MA, for Cybermedica, Inc.

Joseph H. Baldiga, Mirick, O'Connell, DeMallie & Lougee, LLP, Worcester, MA, Chapter 7 Trustee.

### MEMORANDUM OF DECISION

JOEL B. ROSENTHAL, Bankruptcy Judge.

The matter before the Court is the Motion of Robert N. Hotchkiss, M.D. for Relief from the Automatic Stay (the "Automatic Stay Motion") [Docket # 193], the Joinder of Alberto W. Vilar to the Motion of Robert N. Hotchkiss, M.D. for Relief from the Automatic Stay (the "Joinder Motion") [Docket # 201], and the Chapter 7 Trustee's Objections to both aforementioned motions [Docket # s 200 & 203]. Robert N. Hotchkiss ("Dr. Hotchkiss") and Albert W. Vilar ("Mr. Vilar") seek payments from the Underwriters of a Directors and Officers Insurance Policy for the defense costs and expenses of an adversary proceeding brought by the Chapter 7 Trustee (Adv.Proc. # 02–4039). The Court heard oral arguments of counsel, has reviewed the written arguments of counsel, supporting affidavits, and exhibits, as well as the entire record of the case, and based upon such review, and for the following reasons, allows Mr. Vilar's Joinder Motion and finds that to the extent that the automatic stay is implicated, relief from stay is granted so that the Underwriters may pay Dr. Hotchkiss' and Mr. Vilar's defense costs and expenses associated with the adversary proceeding.

### I. BACKGROUND

On February 7, 2001, CyberMedica, Inc. (the "Debtor") filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code (the "Code" or the "Bankruptcy Code") and Joseph H. Baldiga was appointed as the trustee (the "Trustee"). Subsequently, the Trustee filed a Complaint naming as defendants Dr. Hotchkiss, a former director and officer of the Debtor, and the Hospital for Special Surgery ("HSS"). The Complaint was thereafter amended to add Mr. Vilar, a former director of the Debtor, as a defendant. In the Amended Complaint, the Trustee seeks recovery for alleged ac-

counts receivable from HSS,[1] fraudulent transfers from Dr. Hotchkiss, damages from HSS. Dr. Hotchkiss, and Mr. Vilar (collectively the "Defendants") for alleged misrepresentations, damages from the Defendants based upon promissory estoppel, damages from Dr. Hotchkiss and Mr. Vilar for alleged breach of fiduciary duty, and damages from the Defendants for alleged unfair and deceptive trade practices pursuant to Mass.Gen.Laws ch. 93A, §§ 2 and 11. In the cover sheet of the adversary proceeding, the Trustee quantifies his claim of damages under all counts of the Complaint at one million dollars.

The Debtor has maintained Directors & Officers Organization Coverage under a policy of insurance provided by Lloyd's, London (the "Underwriters") under Business Management Indemnity Insurance Certificate No. 90003067 (the "D & O Policy"). The D & O Policy has an aggregate limit of two million dollars and provides for the following coverage.

(1) Underwriters shall pay on behalf of the Directors and Officers Loss resulting from any Claim first made against the Directors and Officers during the Certificate Period for a Wrongful Act.

(2) Underwriters shall pay on behalf of the Assured Organization Loss which the Assured Organization is required or permitted to pay as indemnification to any of the Directors and Officers resulting from any Claim first made against the Directors and Officers during the Certificate Period for a Wrongful Act.

(3) Underwriters shall pay on behalf of the Assured Organization Loss resulting

from any Claim first made against the Assured Organization during the Certificate Period for a Wrongful Act.

D & O Policy, page 13. Accordingly, the D & O Policy provides direct coverage to the directors and officers for defense costs and coverage to the Debtor for both indemnification of its directors and officers and for claims against the Debtor by third parties.

Dr. Hotchkiss and Mr. Vilar argue that as former directors and/or officers of the Debtor and as defendants to the Trustee's Complaint, they have a contractual right to payment of defense costs and expenses related to the adversary proceeding and any loss resulting from the Trustee's claims.[2] The Underwriters are willing to pay the defense costs and expenses incurred to date but have not done so because the Trustee opposes all distribution from the D & O proceeds to fund the adversary proceeding defense.[3] Subsequently, counsel to the Underwriters wrote a letter to Dr. Hotchkiss' and Mr. Vilar's respective counsels indicating that in light of the Trustee's opposition to the distribution of the D & O Policy, the insurer would not pay for the ongoing defense costs and expenses absent an order from the Court authorizing such payments. Thereafter, Dr. Hotchkiss filed the Automatic Stay Motion and Mr. Vilar filed the a Joinder Motion. The Trustee contends in his Objection to said Motions that Dr. Hotchkiss and Mr. Vilar do not have a present right to defense costs payments because such payments may deplete the funds which could go to the Trustee for indemnification

---

1. The Amended Complaint alleges that the pre-petition accounts receivable from HSS total at least $719,857.

2. As former officers and or directors of the Debtor, Dr. Hotchkiss and Mr. Vilar are covered by the Debtor's D & O Policy for defense costs because the claim against them was first made during the Policy's coverage period.

3. In a letter issued to the Underwriters, the Trustee does not state the reason for his opposition.

costs or to other claimants. On May 30, 2002, this Court heard oral arguments of counsel on the various motions and took the matter under advisement.

## II DISCUSSION

This Court must determine if the D & O Policy and its proceeds are property of the estate pursuant to Section 541(a)(1) of the Bankruptcy Code and if so, if cause exists pursuant to Section 362(d)(1)[4] to terminate the automatic stay. Dr. Hotchkiss and Mr. Vilar argue that the D & O proceeds are not property of the estate and the automatic stay is not applicable because the Debtor does not have an interest in the proceeds because no claims have been filed for indemnification or for the Debtor's own wrongful acts. They further argue that even if there are possible claims against the Debtor, either for indemnification or for the Debtor's own wrongful acts, the bar date has passed for such claims to be filed. Under Federal Bankruptcy Rule 3002(c)(3)[5] a claim may arise after the bar date under the facts of this case. The Trustee argues that the estate does have an interest in the proceeds because, if he were to prevail in the adversary proceeding, the Trustee may ultimately be entitled to some or all of the proceeds of the D & O Policy for the Debtor's indemnification of the D & O defense costs and loss. The Trustee asserts that payment to Dr. Hotchkiss and Mr. Vilar would reduce the available proceeds and diminish the estate's ability to ultimately receive full payment for indemnification. The Trustee argues that for every dollar advanced to the Defendants, there will be one less dollar of coverage available for indemnification coverage and/or to satisfy claims made by other parties against the proceeds of the D & O Policy.

 Under Section 362 of the Bankruptcy Code, an automatic stay is imposed as of the petition date and stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . ." 11 U.S.C. § 362(a)(3). Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The legislative history makes it plain that "[t]he scope of this paragraph [section 541(a)] is broad. It includes all kinds of property, including tangible or intangible property . . ." S.Rep. No. 95–989, 95th Cong., 1st Sess. 82 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5868; See *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The purpose of bankruptcy law is "to place the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors." *Straton v. New*, 283 U.S. 318, 320–21, 51 S.Ct. 465, 466, 75 L.Ed. 1060 (1931).

4. "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—for cause . . ." 11 U.S.C. § 362(d)(1).

5. "In a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code, except as follows:—(3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judgment imposes a liability which is not satisfied, or a duty which is not performed within such period or such further time as the court may permit, the claim shall not be allowed." Fed.R.Bankr.P. 3002(c)(3).

The majority view is that insurance *policies* are property of the bankruptcy estate and protected by the automatic stay provision of Section 362(a)(3) of the Code. See, e.g., *MacArthur Co. v. Johns–Manville Corp. (In re Johns–Manville Corp.),* 837 F.2d 89, 92 (2d Cir.1988), *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.),* 788 F.2d 994, 1001 (4th Cir.1986), *In re Davis,* 730 F.2d 176, 184 (5th Cir.1984); *In re First Central Financial Corp.,* 238 B.R. 9 (Bankr.E.D.N.Y. 1999); *In re Sacred Heart Hospital of Norristown,* 182 B.R. 413, 417 (Bankr. E.D.Pa.1995). However, courts are in disagreement on whether or not insurance *proceeds* are property of the estate. See *Directors and Officers Insurance: Current Issues in Bankruptcy,* Boston Bar Association, Bankruptcy Law Section, Bench Meets Bar Conference, Kenneth S. Leonetti, Adam Weisberger (2002) (this article offers an extensive discussion of D & O coverage and the implication of the automatic stay). Whether the proceeds of a D & O liability insurance policy is property of the estate must be analyzed in light of the facts of each case. See *In re Sfuzzi, Inc.,* 191 B.R. 664, 668 (Bankr.N.D.Tex.1996). "A bankruptcy estate can have no greater claim to the proceeds of property of the estate than the debtor would have had outside of bankruptcy." *In re Wiesner,* 267 B.R. 32, 35 (Bankr.D.Mass.2001).

Some courts have held that if a debtor does not have a direct interest in the insurance proceeds, the proceeds are not property of the debtor's estate. See *Louisiana World Exposition, Inc. v. Federal Ins. Co. (In re Louisiana World Exposition, Inc.),* 832 F.2d 1391, 1400–01 (5th Cir.1987); *In re Daisy Syst. Sec. Litig.,* 132 B.R. 752, 755 (N.D.Cal.1991) ("the proceeds of the [D & O] policies in this case are not simply assets of [the company's] bankruptcy estate to be divided among creditors according to bankruptcy law"); *Zenith Laboratories Inc. v. Sinay (In re Zenith Labs., Inc.),* 104 B.R. 659, 665 (D.N.J.1989); *Youngstown Osteopathic Hospital Ass'n v. Ventresco, Jr. (In re Youngstown Osteopathic Hosp. Ass'n),* 271 B.R. 544, 551 (Bankr.N.D.Ohio 2002); *In re Imperial Corp. of America,* 144 B.R. 115, 119 (Bankr.S.D.Cal.1992) (neither the liability proceeds of the D & O policy nor the corporation's indemnification of the sued directors' and officers' litigation expenses constituted property of the estate).

In *Louisiana World Exposition,* the creditors' committee sought an injunction and enforcement of the automatic stay barring further payments to the directors and officers under the D & O policy. *In re Louisiana World Exposition, Inc.,* 832 F.2d at 1394. The policy at issue included director and officer liability and corporate reimbursement coverage with an aggregate limit of $20,000,000. *Id.* The creditors' committee argued that if it succeeded in its suit against the directors and officers, it would be entitled to the liability proceeds, which will have been diminished due to payment of the directors' and officers' legal defense costs. *Id.* The court held that the policy was not property of the estate because it only benefited the directors and officers, not the corporation, either by covering directly the officers and directors, or indirectly by reimbursing the corporation for its indemnification of the expenses incurred by the officers and directors. *Id.*

In finding that D & O insurance proceeds is not property of the estate, the court in *In re Youngstown Osteopathic,* 271 B.R. at 550, cites the following passage explaining the purpose of D & O policies:

D & O policies are obtained for the protection of individual directors and officers. Indemnification coverage does not change this fundamental purpose.

There is an important distinction between the individual liability and the reimbursement portions of a D & O policy. The liability portion of the policy provides coverage directly to officers and directors, insuring the individuals from personal loss for claims that are not indemnified by the corporation. Unlike an ordinary liability insurance policy, in which a corporate purchaser obtains primary protection from lawsuits, a corporation does not enjoy direct coverage under a D & O policy. It is insured indirectly for its indemnification obligations. In essence and at its core, a D & O policy remains a safeguard of officer and director interest and not a vehicle for corporate protection.

*Ochs v. Lipson (In re First Central Financial Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y.1999).

However, some courts have distinguished *Louisiana World Exposition* and have found insurance proceeds to be property of the debtor's estate. In *Sacred Heart Hospital of Norristown*, the court found that since the D & O policy provided liability coverage to the debtor itself, the proceeds were property of the debtor's estate. *In re Sacred Heart Hospital of Norristown*, 182 B.R. at 419–420. The court stated that, "[p]roceeds available for the [d]ebtor's liability exposure are not segregated from the [p]roceeds available to the directors and officers. Thus, the [d]ebtor is indeed an insured and has a sufficient interest in the [p]roceeds as a whole to bring them into the estate." *Id.* (citation omitted).

Another court, distinguishing *Louisiana World Exposition,* based its focus on the liability rather than indemnification coverage. *Circle K. Corp. v. Marks (In re Circle K. Corp.)*, 121 B.R. 257, 260 (Bankr. D.Ariz.1990). In *Circle K. Corp.*, the debtor requested a preliminary injunction

against continued litigation of securities fraud actions against the debtor, its officers, and directors. *Id.* at 258. The court found that the debtor's insurance policies, which provides liability coverage for the debtor's officers and indemnification coverage for the debtor, were property of the debtor's estate. *Id.* at 261. The court reasoned that the insurance policies, which covered reimbursement to the debtor of the officer's litigation expenses, would become depleted through the ongoing litigation, and the debtor's exposure in other litigation would increase as the policy limits were exhausted. *Id.* Some courts have held that where a liability insurance policy provides broad coverage directly to a debtor for liability arising from the acts or omissions of the debtor's directors and officers proceeds of such policies are property of the bankruptcy estate. See *Homsy v. Floyd (In re Vitek)*, 51 F.3d 530 (5th Cir.1995); *In re Leslie Fay Companies, Inc.*, 207 B.R. 764, 784 (Bankr.S.D.N.Y. 1997); *In re Sacred Heart Hospital of Norristown*, 182 B.R. at 413.

This Court adopts the logic of the cases holding that D & O insurance proceeds are property of the estate. There is a fundamental test that has been used in determining whether or not property belongs to the estate and that test is whether "the debtor's estate is worth more with them then without them." *Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New Engl. Reins. Corp. (In re Minoco Group of Cos., Ltd.)*, 799 F.2d 517, 519 (9th Cir.1986) (citation omitted). This Court finds that the D & O Policy is of benefit to the estate since the estate is worth more with it than without it because it insures the Debtor against indemnity and entity claims, see *In re Minoco Group of Cos. Ltd.*, 799 F.2d at 519, and is therefore part of the bankruptcy estate.

■ This Court further finds that there is cause to lift the automatic stay because Dr. Hotchkiss and Mr. Vilar may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments. Dr. Hotchkiss and Mr. Vilar are in need *now* of their contractual right to payment of defense costs and may be harmed if disbursements are not presently made to fund their defense of the Trustee's Complaint. Additionally, the harm to the Debtor if relief from stay is granted is speculative given the fact that there are presently no claims for indemnification nor entity coverage,[6] therefore, there does not appear to be an immediate risk of the D & O Policy's two million dollars being depleted.[7] See *In re CHS Elecs., Inc.*, 261 B.R. 538, 544 (Bankr. S.D.Fla.2001) (relief from stay granted to settle claims from D & O policy, reasoning that there was no actual possibility of a claim based on entity coverage). Although the Trustee argues that there will be indemnification claims, the Debtor will not be harmed because the claims now being paid for defense costs are among the claims for which the Debtor is ultimately obligated to indemnify the directors and officers.

This Court agrees with the reasoning expressed by Judge Kenner granting leave to an insurer to fund director and officer defense costs from the proceeds of a D & O policy. *Executive Risk Indemnity, Inc. v. Boston Regional Med. Ctr., Inc. (In re Boston Regional Med. Ctr., Inc.)*, Adv. Proc. No. 01–1376, Case No. 99–10860 (Bankr.D.Mass. April 2, 2002). In that case, the underwriters filed a motion for an order authorizing payment of reasonable expert costs. The court looked at this motion as one for a preliminary injunction and found that the directors and officers needed the insurance proceeds in order to retain the experts and that they would be irreparably harmed if they are not distributed in time to conduct their defense. The court concluded that the harm to the debtor is uncertain, less severe than the opposing harm, and probably not irreparable. The court reasoned that the proposed payment is small in comparison to the policy limit and that there will be no harm at all if claims against the policy do not exceed the limit. The court additionally reasoned that there will be no harm to the extent that the claims now being paid are among the claims for which the debtor is ultimately obligated to indemnify the directors and officers. Accordingly, the court granted leave from the automatic stay for the purpose of making payments of expert costs not to exceed $600.000. Such leave was granted even though the aggregate claims by the officers, directors, and trustees for

---

**6.** The Debtor argues that the bar date for such claims has passed. However, this Court notes that pursuant to Fed.R.Bankr.P. 3002(c)(3), a claim may arise after the bar date under the facts of this case. That Rule provides that "... a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under 341(a) of the Code, except as follows:—(3) An unsecured claim which arises in favor of an entity or becomes allowable as a result of a judgment may be filed within 30 days after the judgment becomes final if the judgment is for the recovery of money or property from that entity or denies or avoids the entity's interest in property. If the judg-ment imposes a liability which is not satisfied, or a duty which is not performed within such period of such further time as the court may permit, the claim shall not be allowed." Fed. R.Bankr.P. 3002(c)(3). During oral arguments, the Trustee made a representation that some creditors have alluded to the possibility of bringing claims against certain directors and officers.

**7.** During oral arguments, the Trustee made a representation that some creditors have alluded to the possibility of bringing claims against certain directors and officers.

coverage of defense costs and liabilities may have substantially exceeded the policy's twenty million coverage limit.

The Trustee further argues that while D & O liability policies frequently provide defense costs payments on an ongoing basis, the Debtor's D & O Policy does not provide for the payment of defense costs as they accrue. Therefore, Hotchkiss and Vilar have no present rights to an advancement of proceeds of the D & O Policy. Section D–7 of the D & O Policy provides that "Underwriters shall pay Costs, Charges and Expense no more than once every 90 days." Accordingly, this Court holds that the Underwriters are allowed to make the defense costs disbursements in accordance to their contractual obligation contained within the D & O Policy.

*Exclusions*

The Trustee argues that based on the claims made in his Amended Complaint, Dr. Hotchkiss and Mr. Vilar may ultimately not to be entitled to coverage under the D & O Policy for defense costs and losses because of certain exclusion provisions contained within the policy. The D & O Policy provides for the following exclusions with any claim:

a. brought about or contributed to by any personal profit or advantage gained by any of the Directors and Officers to which they were not legally entitled;

b. based upon, arising out of, directly or indirectly resulting from in consequence of, or in any way involving the service of any of the Directors and Officers in any position or capacity in any entity other than the Assured Organization provided, however, that this exclusion shall not apply to Loss resulting from any such Claim to the extent that:

(i) such Claim is based on the service of any of the Directors and Officers as a director, officer, trustee, governor,

executive director or similar position of any Outside Entity where such service is with the knowledge and consent of the Assured Organization, and

(ii) such Outside Entity is not permitted or required by law to provide indemnification to such Directors and Officers, and

(iii) such Loss is not covered by insurance provided by any of the Outside Entity's insurers.

D & O Policy, page 15. The Trustee argues that he has alleged facts in his Amended Complaint that may implicate the foregoing coverage exclusions and that if this Court authorizes the payment of defense costs as they accrue, Dr. Hotchkiss and Mr. Vilar may receive the benefit of payments to which they may ultimately not be entitled. This Court is being asked to decide is if the automatic stay should be lifted to the extent that the D & O Policy covers the directors and officers defense costs. This Court is not determining whether or not the Underwriters should make those payments; Underwriters make such payments at their peril.

*Submission of Fee Applications*

The Trustee asks this Court that in the event that the Underwriters are authorized to advance defense costs and expenses they should be required to file and serve fee applications prior to payment for a determination that such fees and expenses are reasonable. The Trustee submits that the proceeds available to the estate under the D & O Policy should be reduced only to the extent of reasonable fees and expenses. This Court declines to make such a requirement.

**III. CONCLUSION**

For the foregoing reasons, this Court hereby grants Mr. Vilar's Joinder Motion.

20

This Court further allows Dr. Hotchkiss' Motion for Relief from Stay and grants the Underwriters leave to use the proceeds of the D & O Policy to pay the reasonable defense costs and expenses. A separate Order will issue.