DECISION
This matter is before the Court for decision with respect to Receiver Allan M. Shine's (the Receiver) petition to settle claims asserted by the Receiver against certain former officers of the Education Partnership, Inc. (EP). The Receiver has asserted claims against the former officers under the Directors and Officers Liability Policy (the Policy) for the alleged negligent mismanagement of EP's financial affairs and breach of fiduciary duties. In addition to the proposed settlement of the insurance claims, the Receiver also seeks authorization to settle the disputed portion of the claim of EP's secured lender Sovereign Bank (Sovereign). The City of Providence (the City), supported by its School Department, objects to the Receiver's Petition and has filed a motion to proceed directly against the Policy, arguing that the proceeds payable under the Policy are not assets of the receivership estate. The Receiver argues that the proceeds of the Policy are property of the receivership estate.
 I Facts Travel
EP is a Rhode Island non-profit corporation that conducted education-related programs within Rhode Island and also developed education strategies, policy and legislation at the local and state level. Its primary revenue sources were specific program grants funded by various state *Page 2 
and federal agencies and non-profit charitable foundations. EP became insolvent and was unable to carry out its programs and purposes. EP owed various non-program liabilities to Sovereign, its secured lender, and various other vendors for which it lacked funds to pay. On June 18, 2008, a petition for the appointment of receiver for EP was filed before this Court, which subsequently appointed Allan M. Shine as the temporary receiver of EP. On July 8, 2008, Mr. Shine was duly appointed as permanent receiver.
To assist the Receiver in determining EP's losses and the causes of such losses, the Court granted the Receiver's Petition to engage the accounting firm of Sullivan Company (the Accountants) to conduct an in-depth review of the financial affairs of EP. With the Accountants' assistance, the Receiver concluded that two former officers of EP who oversaw its operations and financial affairs, had caused the misallocation and/or mismanagement of program funds through interfund borrowing, [1] overspending of program grants, commingling of restricted funds, and negligent mismanaging EP's affairs. It is the Receiver's position that those officers breached their fiduciary duties to EP and caused EP to become insolvent and unable to carry out its obligations under the grant programs, to pay the claims of its creditors, and to meet its other financial obligations.
According to the Receiver and the Accountants, two EP programs were involved in the interfund borrowing — The Louis Feinstein Memorial Scholarship Fund (the Feinstein Scholarship)[2] and the Local Educators Action Design Program (LEAD).[3] Based upon such *Page 3 
findings, the Receiver filed claims against the two former officers of EP under the Policy issued to EP by the Chubb Group (Chubb), for the alleged negligent mismanagement of EP's financial affairs and breach of fiduciary duties. The Receiver submitted a claim to Chubb during the term of the Policy, which has a $1,000,000 coverage limit (the Insurance Claim). The Receiver and Chubb agreed to try to resolve the Insurance Claim through mediation before the Receiver initiated any legal proceedings. On March 30, 2009, the parties, with the assistance of the mediator and subject to approval by this Court, negotiated a settlement of the Insurance Claim with Chubb to pay the receivership estate $525,000 in full satisfaction of the Insurance Claim and in exchange for a release of claims under the Policy and against all past and present officers and directors of EP.
Sovereign asserts a first priority security interest against all assets of EP, including but not limited to the settlement proceeds proposed to be paid pursuant to the Policy, to secure its remaining indebtedness in excess of $155,000. Previously, Sovereign filed with this Court a Motion to Approve its Secured Claim in which it asserted a first priority lien against all assets and claims of EP.[4] In response to Sovereign's Motion, the Receiver raised the issue of whether Sovereign's security interest was duly perfected against the Insurance Claim. The Court approved Sovereign's claim and determined it held a first priority lien against all assets of EP, except for the Program Funds and the Insurance Claim, deferring the issues as to these assets pending further proceedings and rulings by the Court. *Page 4 
In connection with the proposed settlement of the Insurance Claim as set forth above, and to resolve the disputed portion of Sovereign's claim against the Insurance Claim settlement proceeds, the Receiver proposes to pay Sovereign (a) approximately $111,000 in funds currently on hand in the receivership estate (excluding the Program Funds) against which Sovereign holds a Court-approved first priority lien, and (b) $22,000 from the Insurance Claim settlement proceeds of $525,000. According to the terms of such settlement, Sovereign and RIDE would retain all of their asserted rights against the Program Funds (subject to this Court's ruling on the entitlement to such funds). In consideration of these payments, any unsecured claim of Sovereign would be waived against the receivership estate.[5]
The Receiver, supported by Sovereign, Valerie Forti, [6] and Alan Shawn Feinstein, [7] has petitioned this Court for approval to settle claims asserted by the Receiver against certain former officers of EP under the Policy and to settle the disputed portion of Sovereign's claim. The City, with PPSD, objects to the Receiver's petition and has filed a motion to proceed directly against the policy, arguing that the proceeds payable under the Policy are not assets of the receivership estate.
 II Standard of Review
The Court is confronted with the Receiver's recommendations to settle claims asserted under the Policy against former officers of EP. However, prior to evaluating such recommendations, the Court must first determine whether the proceeds available under the *Page 5 
Policy are assets belonging to the receivership estate. Since this limited issue has not been addressed by the State and Federal Courts in Rhode Island, the law of other jurisdictions proves informative. To determine whether the proceeds of a directors officers insurance policy (D O Policy) are included in the property of the estate, a court must analyze the specific facts of each case.In re CyberMedica, Inc., 280 B.R. 12, 16 (Bankr.D.Mass. 2002) (citing In re Sfuzzi, Inc.,191 B.R. 664, 668 (Bankr.N.D.Tex. 1996)). The fundamental test for such a determination is whether the debtor's estate is worth more with the proceeds than without them. In re CyberMedica,Inc., 280 B.R. at 17 (quoting In re Minoco Group of Cos.,Ltd., 799 F.2d 517, 519 (9th Cir. 1986)).
If the Court determines that the proceeds of the Policy in this matter are included in the property of the receivership estate, the Court must then evaluate the Receiver's recommendations regarding the settlement. As the Rhode Island Supreme Court has yet to articulate the standard of review that a court must apply when evaluating a receiver's recommendations, the Court will look to the Bankruptcy Code and Federal Court interpretations thereof for guidance. See Reynolds v. E C Associates,693 A.2d 278, 281 (R.I. 1997). Although compromises are favored in bankruptcy, the reviewing court must "`assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal."'Jeffrey v. Desmond, 70 F.3d 183, 185 (1st
Cir. 1995) (quoting In re Boston Providence R.R. Corp.,673 F.2d 11, 12 (1st Cir. 1982)); see also In reJasmine, Ltd., 258 B.R. 119, 123 (Bankr.D.N.J. 2000); In reMartin, 91 F.3d 389, 393 (3rd Cir. 1996). In striking such a balance the court should consider four criteria: (1) the probability of success in the litigation being compromised; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; *Page 6 
and, (4) the paramount interest of the creditors. Jeffrey,70 F.3d at 185 (citing In re Anolik,107 B.R. 426, 429 (Bankr.D.Mass. 1989)); see alsoJeremiah v. Richardson, 148 F.3d 17, 23 (1st
Cir. 1998); In re Martin, 91 F.3d at 393. Further, in applying such factors "the court `relies heavily on the trustee,' and `under normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification.'" In reJasmine, Ltd., 258 B.R. at 123 (quoting In re Martin,91 F.3d at 393); see also In re Mailman Steam CarpetCleaning Corp., 212 F.3d 632, 635 (1st Cir. 2000). Therefore, in light of such persuasive authority, when reviewing the Receiver's petition to settle claims, the Court will consider the appropriate factors and give deference to the prudent business judgment of the Receiver.
 III Discussion A Policy Proceeds
The fundamental issue in this case is whether the proceeds of the Policy, which is owned by EP, are assets belonging to the receivership estate. The City maintains that although the Policy may be property of the receivership estate, the proceeds payable under the Policy are not estate assets. The Receiver challenges the City's position, asserting that the proceeds of the Policy in this instance are property of the receivership estate and are not directly available to the City (or any other creditor) as a possible source of recovery solely for itself.
Although a D O Policy purchased by a corporate debtor is generally the property of the bankruptcy estate, proceeds payable under such policies are not necessarily estate assets. In reCyberMedica, Inc., 280 B.R. at 16. As discussed supra, any determination of whether the proceeds of a D O Policy are property of the estate must be made on a case by case basis, with regards to the specific facts of each case. Id.
(citing In re Sfuzzi, Inc., 191 B.R. at 668). The *Page 7 
rationale is that "[a] bankruptcy estate can have no greater claim to the proceeds of property of the estate than the debtor would have had outside of bankruptcy." In re CyberMedica, Inc.,280 B.R. at 16 (quoting In re Wiesner,267 B.R. 32, 35 (Bankr.D.Mass. 2001)). In order for the proceeds to be property of the estate, the estate must be worth more with the proceeds than without them. Id. at 17.
To support its position that in this instance the proceeds are not property of the receivership estate, the City cites to the language of In re Louisiana World Exposition, Inc. v. Federal InsuranceCo., 832 F.2d 1391 (5th Cir. 1987) and In reFirst Financial Corp., 238 B.R 9 (Bankr.E.D.N.Y. 1999). Both cases declared that the liability proceeds of a D O Policy were not the assets of the bankruptcy estate but instead belonged to the directors and officers as beneficiaries. However, in both cases the policies only provided liability coverage to the directors and officers of the corporations and indirect coverage to the corporation for any indemnification payments made to the directors and officers. The Louisiana World Exposition Court emphasized that its holding was narrow and fact specific, stating that "[cases which find that liability proceeds are included in property of the estate because the proceeds are payable to the debtor are] different from the liability coverage here, which does not cover the liability exposure of the corporation at all, but only of its directors and officers and is payable only to them." In re Louisiana WorldExposition, Inc. v. Federal Insurance Co., 832 F.2d at 1400;see also In re Sacred Heart Hosp. of Norristown,182 B.R. 413, 419 (Bkrtcy.E.D.Pa. 1995). Since the debtor did not have a direct interest in the insurance proceeds, the proceeds did not enhance the value of the estate and therefore, they were not estate property. Id. at 1400-01; see also In reCyberMedica, Inc., 280 B.R. at 16; In re DaisySyst. Sec. Litig., 132 B.R. 752, 755 (Bankr. N.D.Cal. 1991). *Page 8 
However, in situations in which the policy coverage extends not only to the directors and officers but also to the corporation itself, courts have consistently found that the proceeds of the policy belong to the bankruptcy estate. For instance, the Fifth Circuit Court of Appeals in In re Vitek, Inc.,51 F3d 530 (5th Cir. 1995) was reviewing the decision of the bankruptcy court which had approved a settlement agreement concluding the estate was the sole owner of the insurance policies as well as the proceeds. Additional insureds under each of the policies, being covered there under as officers, directors, or stockholders of the corporation, objected and claimed they had a property interest in the policies. Id. However, the Court distinguished the holding of Louisiana World Exposition
indicating that it applies in the narrow situation "when a debtor corporation owns a liability policy that exclusively covers its directors and officers." Id. at 535. Further, the Court acknowledged that when
 "[f]aced with the typical situation in which a debtor corporation's liability policies provide the debtor and thus the estate with direct coverage against third party claims, virtually every court to have considered the issue has concluded that the policies-and clearly the proceeds of those policies-are part of debtor's bankruptcy estate, irrespective of whether those policies also provide liability coverage for the debtor's directors and officers." Id. at 534.
Accordingly, the Court in In re Vitek, Inc. affirmed and reinstated the order of the bankruptcy court, which authorized the settlements that were proposed by the trustee, finding that there was no support for a general principle of insurance law that forbids an insurer from settling with one of its coinsureds to the disadvantage of another one. Id. at 537.[8]
In the instant matter, the subject Policy provides liability coverage directly to the directors and the officers for losses not indemnified by EP. Additionally, the policy provides *Page 9 
coverage to EP for any losses for which EP grants indemnification to an executive or employee of EP. However, the significant factor in this matter is that the Policy also provides coverage directly toEP for any third party claims. The policy in pertinent part states "[t]he Company shall pay, on behalf of the Organization [EP], Loss which the Organization becomes legally obligated to pay on account of any Claim first made against the Organization during the Policy Period . . ." (Pl. Ex. 1 ¶ 3.) Since the receivership estate has a direct interest in the Policy proceeds for both indemnity and entity claims, and the proceeds can then be divided up among creditors, the estate is certainly worth more with the proceeds than without them. See In re CyberMedica,Inc., 280 B.R. at 17 (citing In re Minoco Group of Cos.Ltd., 799 F.2d at 519). Therefore, in consideration of the prevailing case law and the direct Policy coverage to EP, this Court finds that the proceeds of the Policy are properly the property of the receivership estate.
 B Petition To Compromise
Given that the proceeds of the Policy are included in the property of the receivership estate, the Court must now determine whether or not to approve the Receiver's petition to settle claims asserted by the Receiver against certain former officers of EP as well as the disputed portion of Sovereign's secured claim. According to the Receiver, the Court should approve the proposed settlement under the Policy, which it argues is fair, reasonable, and in the best interests of the receivership estate and its creditors. The City's objection to the approval of the settlement under the Policy is based solely upon its argument that the proceeds are not property of the estate, further claiming that the "insured vs. insured" exclusion in the Policy does not entitle EP to any proceeds outside of the receivership. Since the Court has already determined that the proceeds are property of the estate and the City has failed to object to the reasonableness of the *Page 10 
proposed settlement, the City no longer has standing to object to the Receiver's petition to compromise.
As discussed supra, in determining whether to approve the Receiver's proposed settlement the Court must consider certain factors and "`assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'" Jeffrey, 70 F.3d at 185 (quotingIn re Boston Providence R.R. Corp., 673 F.2d at 12.) Among the factors to be considered are: (1) the probability of success in the litigation; (2) the likelihood of difficulties in collection of any judgment; (3) the complexity, expense, inconvenience, and delay of the litigation involved; and (4) the paramount interests of the creditors. Jeffrey, 70 F.3d at 185. The Court will also give deference to the Receiver's business judgment. In re Jasmine,Ltd., 258 B.R. at 123.
When considering the likelihood of success in the litigation being compromised, the Court is mindful that the Policy contains an insured versus insured exclusion which generally bars coverage of claims against directors and officers brought by the company or on behalf of the company. See City Ex. A ¶ 5(c). The specific language of the subject "insured vs. insured" exclusion does not seem to preclude the Receiver from recovering under the Policy. The Policy specifically states that the exclusion found in section 5(c) "shall not apply to a Claim brought or maintained derivatively on behalf of the Organization [EP] by one or more securityholders of the Organization or persons who are not Insured Persons . . ." However, Rhode Island courts have not addressed such an issue and the law of other jurisdictions is unsettled. See In reMolten Metal Technology, Inc., 271 B.R. 711 (Bankr.D.Mass. 2002) (holding that Chapter 11 Trustee and the corporation are distinct entities and therefore the insured vs. insured exclusion did not apply to claims asserted by the Trustee against debtor's officers and directors.); see also *Page 11 American Casualty Company of Reading, Pennsylvania v. SentryFederal Savings Bank, 867 F. Supp. 50 (D. Mass. 1994) (finding that insured vs. insured exclusion in directors' and officers' liability policy did not bar coverage for claims asserted against directors and officers by receiver.); but cf.Reliance Ins. Co. of Illinois v. Weis,148 B.R. 575, (Bankr.E.D.Mo. 1992) (where a creditors' committee in a Chapter 11 bankruptcy sued former directors and officers, the insured vs. insured exclusion applied since the claims were necessarily brought on behalf of the company); National UnionFire Insurance Co. of Pittsburgh v. Olympia Holding Corp., Case No. 1:94-cv-2081-GET (9/18/1995), affirmed without opinion inNational Union Fire v. Olympia Holding,148 F.3d 1070 (11th Cir. 1998) (holding there is no significant legal distinction between the company and the trustee for the bankruptcy estate). Consequently, the probability of success in the compromised litigation is, as the Receiver points out, uncertain.
Further, the Court must give deference to the business judgment of the Receiver — with over 40 years of experience in the insolvency field in Rhode Island — who maintains that the settlement is in the best interests of the receivership estate and its creditors. The Receiver points out that without a settlement under the Policy, the position of Chubb is that the actions of the officers allegedly responsible for EP's losses did not trigger liability under the Policy, making collection of a judgment more uncertain. Additionally, a trial against the officers would not only cause significant delay, inconvenience, and expense to the receivership, but also likely delay and reduce the funds eventually available to the creditors. Therefore, after considering all the relevant facts concerning the settlement and its effects on the receivership estate, the Court approves the Receiver's petition to settle claims asserted by the Receiver against certain former officers of EP under the Policy. *Page 12 
Additionally, with regard to the proposed settlement concerning the disputed portion of Sovereign's claim against the Insurance Claim settlement proceeds, the Receiver believes such settlement is in the best interests of the receivership estate and its creditors in order to avoid the costs and delays in litigating such issue. Further, unsecured creditors benefit from the proposed settlement with Sovereign's waiver of any unsecured claims it may have against the receivership estate. Moreover, notice has been given to creditors and all interested parties and no objections have been filed, other than as noted herein. Therefore, the Court again gives deference to the business judgment of the Receiver and approves the settlement of the disputed portion of Sovereign's claim against the Insurance Claim settlement proceeds.
 VI Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court finds that the proceeds of the Policy, which provides coverage directly to EP for any third party claims, are properly the property of the receivership estate. Additionally, given the uncertainty of success in the compromised litigation, the delay, expense, and inconvenience to the receivership, and the recommendation of the Receiver, the Court approves the Receiver's petition to settle claims asserted by the receiver under the Policy for the alleged negligent mismanagement of EP's financial affairs and breach of fiduciary duties of certain former EP officers. The Court also approves the settlement of the disputed portion of Sovereign's claim against the Insurance Claim settlement proceeds.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] Interfund borrowing for these purposes means using funds for purposes other than the designated program and/or paying administrative expenses in excess of program or grant guidelines.
[2] The Feinstein Scholarship was established in 1993 with the Public Education Fund, a predecessor to EP, and was funded in the amount of $2,400,000. Its funds were maintained in a Morgan Stanley Investment Account, originally titled Public Education Fund, Feinstein Scholarship Fund. Based on their review, the Accountants concluded that as of June 2008, the Morgan Stanley account had a shortfall of approximately $333,000.
[3] EP served as fiscal agent for the LEAD program which was administered by the Providence Public School Department (PPSD) and funded in part by the Wallace Foundation and in part by PPSD. Based on their review, the Accountants concluded that the total expected budget for the LEAD Program as of July 1, 2007 was about $1,285,000, yet the actual program-related expenditures by EP as of June 20, 2008 were approximately $834,000, leaving a shortfall of about $451,000 in program funds.
[4] The Rhode Island Department of Education (RIDE) filed a limited objection to said Motion with respect to approximately $25,929 held by the Receiver in escrow that had been issued by RIDE to EP for a specific grant program conducted by EP (the Program Funds). Pursuant to an order of this Court on March 10, 2010, Sovereign's motion with respect to the $25,929 was approved and the Receiver was authorized to turnover such funds from the escrow account.
[5] If Sovereign receives these payments, Sovereign would be paid the principal amount of its claim of approximately $133,000, with the potential to receive full payment of its claim in excess of $155,000 in the event the Court determines Sovereign is entitled to all or a portion of the Program Funds. Further, should the total of the foregoing funds exceed the amount of Sovereign's claim, inclusive of accruing interest and attorney's fees, such excess funds would be remitted to the receivership estate.
[6] Valerie Forti, the Executive Director of EP, is not a party to the receivership, but submitted an amicus curiae brief as an interested non — party.
[7] Alan Shawn Feinstein, a creditor in the receivership, objects to the City's motion and in the alternative has filed a conditional motion to proceed against the Policy and/or the officers and directors.
[8] However, the Court noted that it did not hold or even imply that the coinsureds did not have the right to seek recovery from their insurers in an action for breach of good faith for entering into a settlement which was to the disadvantage of the coinsureds.