In re MILA, INC., Debtor.

Geoffrey Groshong, Chapter 11 Trustee, Appellant,

v.

LAYNE E. SAPP, Appellee.

BAP No. WW–09–1142–MoPaH.
Bankruptcy No. 07–13059–SJS.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 23, 2009.

Filed Jan. 5, 2010.

Ordered Published Jan. 29, 2010.

538

Brian Esler, Miller Nash LLP, Seattle, WA, for Geoffrey Groshong, Appellant.

C. Keith Allred, Davis Wright Tremaine LLP, Seattle, WA, for Layne E. Sapp, Appellee.

Before: MONTALI, PAPPAS and HOLLOWELL, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge:

Appellant, chapter 11 [1] trustee Geoffrey Groshong ("Trustee"), appeals a bankruptcy court order granting Appellee, Layne E. Sapp ("Sapp"), relief from the automat-

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

ic stay allowing the Federal Insurance Company ("Insurer") to advance payments to Sapp for his legal defense costs under a directors and officers insurance policy ("D & O policy") held by corporate debtor MILA, Inc. ("MILA"). Because the bankruptcy court did not abuse its discretion in granting Sapp relief from the automatic stay, we AFFIRM.

## I. FACTS

### A. Background Facts.

Sapp incorporated MILA in 1989 as a mortgage brokerage firm. Since that time, he was the sole director, chief executive officer, and majority shareholder of MILA. MILA ceased operations approximately three months prior its chapter 11 filing on July 2, 2007. The court appointed Trustee in MILA's case on July 27, 2007.

In October 2006, prior to filing its bankruptcy petition, MILA had purchased a D & O policy (the "Policy") which was to expire in October 2007. The Policy provides two types of coverage: liability and indemnification. The "Declarations" page of the Policy states that the "Parent Organization" is MILA, and further states that "THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED PERSONS DURING THE POLICY PERIOD." "Insured Person(s)" is defined to include only the directors and officers of MILA. Thus, MILA's directors and officers are the named insureds.

The "liability" part of the Policy, often referred to as "A-side" coverage, provides direct coverage to MILA's sole director Sapp and other MILA officers for losses they incur due to their wrongful acts including damages, judgments, settlements, and the like, which are not indemnified by MILA, and further includes payments for their legal defense costs. The "indemnification" part of the Policy, or "B-side" coverage, reimburses MILA to the extent that it has indemnified Sapp or other officers for their own losses.[2]

The Policy has a maximum payout of $1 million for covered losses under both the A-side and B-side coverage, including directors' and officers' defense costs. These features are what make the Policy a "wasting" policy in that any payments for Sapp's (or other officers') defense costs or any liability payments made on their behalf under the A-side coverage reduce the amount available for B-side coverage to MILA and vice versa. The Policy is also a "claims made" policy, which requires that claims against Sapp or other officers be made during the policy period in order to trigger potential coverage.[3]

MILA's bylaws provide that corporate directors and officers, past or present, "shall be indemnified by the corporation ... against all costs, expenses, judgments and liabilities, including attorney's fees ... in connection with or resulting from any claim, action, suit or proceedings" stemming from his or her conduct while acting as a director or officer of MILA. Therefore, MILA is legally obligated to indemnify Sapp and subordinate officers for the type of losses Sapp has incurred.

In December 2007, the Trustee paid approximately $21,000 in estate funds to pur-

---

**2.** Some D & O policies also include liability coverage to the entity for its own direct losses from a claim brought against it. This is known as "C-side" coverage. The Policy does not provide C-side coverage to MILA.

**3.** This is distinguished from an "occurrence" policy, whereby the coverage only extends to losses occurring within the policy period though the claim may still be made after the policy expires. *Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal.App.4th 869, 885 n. 8, 13 Cal.Rptr.2d 295 (Cal.Ct.App.1992).

chase an extension of the Policy's coverage for an additional year, to include claims made against MILA's directors or officers through October 22, 2008.

## B. Procedural History.

On August 28, 2008, Trustee filed an adversary proceeding against Sapp alleging a number of claims. Several of these claims have been disposed of on motions to dismiss. In defending himself against Trustee's action, Sapp has incurred and will continue to incur legal fees and expenses.[4] Upon Sapp's request, Insurer agreed to advance his defense costs from the A-side coverage but only if Sapp obtained a comfort order stating that Insurer was not violating the automatic stay by making those payments.

On March 13, 2009, Sapp filed a motion for relief from the automatic stay as to the proceeds of the Policy's A-side coverage. Sapp contended that the Policy's proceeds were not estate property and thus the automatic stay should not prevent him from using the proceeds to fund his defense costs. Alternatively, if the bankruptcy court considered the proceeds property of the estate, Sapp contended that his direct, immediate, and real defense costs greatly outweighed any conceivable benefit to MILA, and thus he was entitled to modification of the stay to receive the insurance payments.

Trustee opposed Sapp's motion, contending that MILA had a direct interest in the Policy's B-side coverage because it protects MILA from Sapp's indemnification claims or the estate from having to make the obliged indemnification payments from its own assets should Sapp exhaust the Policy's limits. Therefore, he argued, since MILA's direct interest in the proceeds renders the estate worth more with them than without them, Ninth Circuit law[5] dictates that the proceeds are estate property protected by the automatic stay, and Sapp had failed to provide cause to modify the stay to permit him access to the proceeds.

A hearing on Sapp's motion was held on April 17, 2009. After listening to argument from both parties and making several inquiries to get a better understanding of the Policy's nuances and the present circumstances, the bankruptcy court made an oral ruling, concluding that: the Policy was property of the estate; MILA was not a named insured and that its recovery right was purely derivative; there were no other potential indemnification claims against the estate; Sapp's harm was clear, immediate, and ongoing; and because it was unlikely that Sapp's defense costs would leave insufficient proceeds for MILA to pay indemnification claims, Sapp was entitled to relief from stay.

---

4. Counsel for Sapp stated at an April 17, 2009 hearing that he was unsure about the amount of legal fees Sapp has incurred to date. However, Trustee's counsel stated that he believes the figure is around $300,000.

5. *The Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New Eng. Reins. Corp. (In re The Minoco Group of Cos. Ltd.),* 799 F.2d 517, 519 (9th Cir.1986) (*"Minoco"*).
   In *Minoco,* the insurer tried to cancel Minoco's D & O policies after it filed bankruptcy. The subject policies offered A-side and B-side coverage. The creditors' committee sought

declaratory relief that cancellation of the policies was automatically stayed by section 362(a), and it also sought an injunction prohibiting the insurer from canceling the policies. *Id.* at 518. The Ninth Circuit held that since the D & O policies protected against the diminution of the value of Minoco's estate because they insured it against director and officer indemnity claims, these policies made Minoco's estate worth more with them than without them; thus, such policies are property of the estate protected by the automatic stay. *Id.* at 519.

The court entered a final order granting Sapp's motion on April 17, 2009. This appeal timely followed.

## II. JURISDICTION

■ The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(G) and 1334. "Orders granting or denying relief from the automatic stay are deemed to be final orders." *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1054 (9th Cir.1997). Therefore, we have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court abuse its discretion when it determined that Sapp had shown cause to modify the automatic stay?

## IV. STANDARD OF REVIEW

■ Whether a particular asset is estate property and whether the automatic stay is applicable to a particular situation are conclusions of law reviewed de novo. *Monumental Life Ins. Co. v. Bibo, Inc. (In re Bibo, Inc.)*, 200 B.R. 348, 350 (9th Cir. BAP 1996), *vacated as moot*, 139 F.3d 659 (9th Cir.1998).

■ The decision of a bankruptcy court to grant relief from the automatic stay under section 362(d) is reviewed for an abuse of discretion. *Kronemyer v. Am. Contractors Indem. Co. (In re Kronemyer)*, 405 B.R. 915, 919 (9th Cir. BAP 2009). We follow a two-part test to determine objectively whether the bankruptcy court abused its discretion. *U.S. v. Hinkson*, 585 F.3d 1247, 1261–63 (9th Cir.2009). First, we determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested. *Id.* If it did, we next determine whether the bankruptcy court's application of the correct legal standard to the evidence presented was "(1) 'illogical,' (2) 'implausible,'

or (3) without 'support in inferences that may be drawn from the facts in the record.' " *Id.* at 1262 (citation omitted). If any of these three apply, we may conclude that the court abused its discretion by making a clearly erroneous finding of fact. *Id.*

## V. DISCUSSION

### A. Section 362.

■ Under section 362(a)(3), an automatic stay is imposed as of the petition date and stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. . . ." Section 541(a)(1) defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." Property of the estate is to be construed broadly (*U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)), and the Ninth Circuit has determined that a debtor's insurance policies are property of the estate. *Minoco*, 799 F.2d at 519.

■ The Bankruptcy Code also recognizes that certain circumstances require the court to respond to other interests and permits a flexible approach to the stay as the circumstances may require. Section 362(d)(1) authorizes the bankruptcy court broad discretion to grant relief from the automatic stay imposed under section 362(a) for "cause." Such relief may include "terminating, annulling, modifying, or conditioning such stay." *Mataya v. Kissinger (In re Kissinger)*, 72 F.3d 107, 108–09 (9th Cir.1995).

### B. Trustee's Contentions And *Minoco*.

The Trustee contends that the bankruptcy court erroneously held that the proceeds were not property of the estate.

However, he also concedes that the court "did not explicitly hold whether the policy proceeds are estate property." *See* Trustee's Op. Br. at 10:11–12. Despite this seemingly contradictory position, he argues that the bankruptcy court abused its discretion in holding that cause existed to modify the stay because it erroneously concluded that the estate had no interest in the Policy's proceeds in contradiction to *Minoco*, that its B-side indemnification right is purely derivative, and, consequently, that the proceeds are not protected by the stay.

At oral argument, the Trustee conceded that the issue before the *Minoco* court was only whether the *policies* were property of the estate subject to the automatic stay, not the policies' *proceeds*. The *Minoco* court stated as much. 799 F.2d at 519–20. Further, the *Minoco* court speculated that perhaps if or when Minoco received money from the insurer to satisfy indemnification claims, such proceeds might fall under section 541(b)—property held in trust by debtor solely for another—and thus would not constitute property of the estate. *Id.*

Moreover, a Washington bankruptcy court has stated that whether D & O policy proceeds are an estate asset has not been decided in the Ninth Circuit. *See Metro. Mortg. & Sec. Co., Inc. v. Cauvel (In re Metro. Mortg. & Sec. Co., Inc.)*, 325 B.R. 851, 855 (Bankr.E.D.Wash.2005) ("The applicability of § 541 to proceeds of insurance policies is not yet a settled question in the Ninth Circuit."). *See also Imperial Corp. of Am. v. Milberg (In re Imperial Corp. of Am.)*, 144 B.R. 115, 118–19 (Bankr.S.D.Cal.1992) (expressly stating that *Minoco* does not control when the question presented is whether or not policy proceeds are estate property); *In re Daisy Sys. Sec. Litig.*, 132 B.R. 752, 755 (N.D.Cal.1991) (same).

Therefore, it does not appear that *Minoco* compels the outcome Trustee suggests: that a D & O policy's proceeds, at least policies offering only A-side and B-side coverage, are property of the policy owner's bankruptcy estate.

## C. The Bankruptcy Court Did Not Decide Whether The Proceeds Were Property Of The Estate.

Contrary to Trustee's assertions, the bankruptcy court did not determine that the proceeds are not estate property; it ruled that regardless of the proceeds' status Sapp had shown requisite cause to be granted relief from stay. Recognizing this alternative ruling, the Trustee has requested that we declare the proceeds are estate property. We decline the Trustee's invitation to render an opinion on this issue because it is not essential to our decision here.

Despite the bankruptcy court's silence on the proceeds' status, it did make certain findings with respect to the proceeds in order to ultimately decide if Sapp was entitled to relief from stay. In making these findings, the bankruptcy court followed the reasoning set forth in cases which have decided the "policy vs. proceeds" issue and then went on to ultimately conclude whether or not a party was entitled to relief from stay, or some other relief. As explained below, even assuming that the proceeds are property of the estate, it was proper for the bankruptcy court to consider these factors in its analysis.

In cases involving D & O policy proceeds, the bankruptcy court must balance the harm to the debtor if the stay is modified with the harm to the directors and officers if they are prevented from executing their rights to defense costs. *See In re Allied Digital Techs. Corp.*, 306 B.R. 505, 514 (Bankr.D.Del.2004); *In re*

*CyberMedica, Inc.,* 280 B.R. 12, 18 (Bankr. D.Mass.2002). Even in cases where the D & O policy proceeds were considered property of the estate, courts have nonetheless granted relief from stay to allow the insurer to advance defense costs payments when the harms weigh more heavily against the directors or officers than the debtor. *See In re CyberMedica, Inc.,* 280 B.R. at 18.

■ One factor courts consider, especially in cases of a "wasting" policy, is whether defense costs payments made to directors and officers under the A-side coverage might exhaust B-side policy limits and potentially expose the estate to liability for obliged indemnification claims. *See In re Metro. Mortg. & Sec. Co., Inc.,* 325 B.R. at 855–57; *In re Leslie Fay Cos., Inc.,* 207 B.R. 764, 785 (Bankr.S.D.N.Y. 1997).

■ Here, the bankruptcy court rejected Trustee's concern about Sapp's defense costs payments exhausting the $1 million proceeds and thereby jeopardizing the estate's ability to be indemnified. It found that because Sapp is likely the only director or officer to receive payments, "the likelihood of . . . leav[ing] insufficient proceeds . . . to pay claims for which the estate might seek B coverage appears to be remote." Although this may be somewhat speculative, it is not clearly erroneous based on the facts before the court. Generally, exhausting policy limits is only a concern when multiple parties are trying to access the proceeds, not just one officer and one trustee.[6] *See Circle K Corp. v. Marks (In re Circle K Corp.),* 121 B.R.

257, 260–62 (Bankr.D.Ariz.1990) (three civil actions pending in district court against both the debtor and its directors and officers; indemnification claims from the directors and officers pending with additional claims to come, further exposing debtor to liability should the policy limits be exhausted).

■ Most importantly, courts consider whether a debtor's indemnification claims under the B-side coverage are real and actual, or whether the likelihood of any such claims are hypothetical or speculative. *See In re Allied Digital Techs. Corp.,* 306 B.R. at 512–14; *In re World Health Alternatives, Inc.,* 369 B.R. at 810–11; *La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.),* 832 F.2d 1391, 1394–95 (5th Cir.1987); *Aetna Cas. & Sur. Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.),* 258 B.R. 119, 128 (D.N.J. 2000); *Adelphia Commc'ns Corp. v. Associated Elec. & Gas Ins. Servs., Ltd. (In re Adelphia Commc'ns Corp.),* 302 B.R. 439, 448 (Bankr.S.D.N.Y.2003); *Youngstown Osteopathic Hosp. Ass'n v. Ventresco (In re Youngstown Osteopathic Hosp. Ass'n),* 271 B.R. 544, 550–51 (Bankr.N.D.Ohio 2002); *In re Circle K Corp.,* 121 B.R. at 260.

As to indemnification, the bankruptcy court found that Sapp has incurred legal fees and other expenses in his defense, that Sapp has not asked MILA for payments, and that MILA has not made (nor will it likely ever make) any indemnification payments to Sapp for which it is seeking reimbursement. Although Trustee asserted that other officers may be out there

---

6. At least two bankruptcy courts have chastised trustees for attempting to use their "super powers" to prevent directors or officers from getting their bargained-for right to receive defense costs. They recognize that the trustee's real concern is that defense costs payments may affect the trustee's right as

plaintiff seeking to recover from the D & O policy rather than, as what trustees often claim, a potential defendant seeking protection. *See In re Allied Digital Techs. Corp.,* 306 B.R. at 512–13, and *Miller v. McDonald (In re World Health Alternatives, Inc.),* 369 B.R. 805, 811 (Bankr.D.Del.2007).

with potential indemnification claims, the court did not find this argument persuasive; Trustee could not point to anywhere in the record as to who these other officers might be, or what potential claims might be out there against them or the estate, and reasoned that any such claims would have been brought by now. We note that since the Policy is a claims made policy, any claims against other MILA officers must have been filed by no later than October 22, 2008, over one year ago.[7]

### D. Regardless Of Whether The Policy's Proceeds Are Property Of The Estate The Bankruptcy Court Did Not Abuse Its Discretion When It Granted Sapp Relief From Stay.

█ The bankruptcy court properly weighed the parties' respective harms and determined that Sapp had shown requisite cause for relief under section 362(d)(1), entitling him to receive payments from the Insurer. Sapp's defense losses were clear, immediate, and ongoing, while Trustee could only show hypothetical or speculative indemnification claims against MILA since neither it nor the estate has paid anything to Sapp and no other actions have been filed against other MILA officers. In addition, the likelihood that Sapp would exhaust the $1 million policy with his defense costs appeared to be remote.

We note a case with strikingly similar facts that provides guidance on this issue. The D & O policy in *In re CyberMedica* had a limit of $2 million and provided C-side coverage to the debtor. 280 B.R. at 14. The bankruptcy court ultimately concluded that the proceeds were property of the

estate. *Id.* at 17. Nonetheless, it granted two directors' motions for relief from stay to obtain advances from the insurer for defense costs they incurred in defending against the trustee's action. Pertinent to its decision was the fact that the directors faced immediate and irreparable harm if they were deprived of their contractual right to payments, while any prejudice to the debtor was merely speculative because it had made no claims for indemnification or entity coverage. *Id.* at 18. Moreover, the court rejected the trustee's argument that indemnification claims might arise in the future, reasoning that defense costs advanced by the insurer would correspond to the claims for which the directors would seek indemnification from the debtor. *Id.* Hence, the insurer's advancement of defense costs—costs for which the debtor was ultimately obligated to pay—actually minimized the potential exposure of the debtor. This is the same reasoning the Fifth Circuit applied in *In re La. World Exposition*, 832 F.2d at 1400. *See also In re Allied Digital Techs. Corp.*, 306 B.R. at 513–14 (proceeds not property of the estate, but even if they were the automatic stay should be lifted when directors or officers face immediate harm yet there is no evidence that coverage for the debtor will be necessary).

Accordingly, the bankruptcy court performed the proper analysis under section 362(d)(1) by weighing the parties' respective harms and concluding that Sapp showed requisite cause to modify the stay. Therefore, we conclude that the bankruptcy court did not abuse its discretion.

---

7. The bankruptcy court also found that MILA was not the named insured and therefore its right to recover is purely derivative. Trustee contends this is incorrect. In reviewing the Policy, we also conclude that MILA's directors and officers are the named insureds, not MILA. Further, Trustee conceded at oral argument that MILA has no interest in the Policy's B-side coverage unless and until it pays something out on behalf of Sapp or any other officer, which renders its interest as purely derivative. In any event, this factor has no bearing on whether Sapp was entitled to relief from stay.

**546**

## VI. CONCLUSION

Based on the foregoing reasons, we AFFIRM.