NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JACARAE LEA FAIRBANKS,<br><div align=right>Debtor.</div> | BAP No. WW-21-1019-FBS<br><br>Bk. No. 3:20-bk-42304-BDL |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-C,<br><div align=right>Appellant,</div><br>v.<br>JACARAE LEA FAIRBANKS,<br><div align=right>Appellee.</div> | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Western District of Washington
Brian D. Lynch, Bankruptcy Judge, Presiding

Before: FARIS, BRAND, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

After appellant Wilmington Savings Fund Society, FSB

("Wilmington") conducted a nonjudicial foreclosure auction under

Washington law, but before the foreclosure trustee executed and delivered

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

a deed to the purchaser, the borrower, appellee Jacarae Lea Fairbanks, filed a chapter 13[1] bankruptcy petition. The bankruptcy court held that the postpetition execution, delivery, and recordation of the foreclosure trustee's deed violated the automatic stay and denied Wilmington's request for retroactive annulment of and prospective relief from the automatic stay to validate or redo those acts.

We conclude that (1) Ms. Fairbanks still had legal title to her home when she filed her bankruptcy case, (2) the recordation of the foreclosure trustee's deed violated the automatic stay, and (3) the bankruptcy court did not abuse its discretion in denying annulment of the stay. We AFFIRM those parts of the bankruptcy court's decision. However, we hold that the bankruptcy court did not properly evaluate the request for prospective stay relief, so we VACATE and REMAND on that issue.

**FACTS**

**A.    Prepetition Foreclosure Efforts**

In November 2006, Ms. Fairbanks executed a deed of trust on her home in Puyallup, Washington. Wilmington is the beneficiary of the deed of trust.

Beginning in 2015, Ms. Fairbanks struggled to make her mortgage payments. She unsuccessfully sought a loan modification and was unable

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

to cure her defaults. At some point, she entered into an agreement with Home Matters, USA. Home Matters advised her that it was communicating with the foreclosure trustee and that because of the COVID-19 pandemic, Wilmington could not foreclose on her property as a matter of law. Home Matters told Ms. Fairbanks that it would take care of all matters relating to the loan and that she should not contact her lender. But Home Matters did not do what it had promised, so Wilmington proceeded with the foreclosure.

On October 2, 2020, the foreclosure trustee conducted a foreclosure sale of the property. A third party bid $353,100, which exceeded the total debt on the property by about $7,000.

Because Ms. Fairbanks was relying on Home Matters to solve her problem, she only became aware of the foreclosure the day after the sale occurred. She then immediately retained bankruptcy counsel.

**B.    Bankruptcy Case and Recording of Foreclosure Trustee's Deed**

Ms. Fairbanks filed a voluntary chapter 13 petition on October 8, 2020. Her counsel notified the foreclosure trustee of the bankruptcy petition the next day. Three days later, the foreclosure trustee executed the Trustee's Deed Upon Sale. The third-party purchaser recorded the foreclosure trustee's deed on October 15, 2020.

About a month later, Wilmington filed a Motion for Retroactive Annulment of the Automatic Stay and Validation of Execution, Delivery and Recording of Trustee's Deed. Wilmington requested that the court

either annul the stay retroactively to validate the foreclosure trustee's postpetition acts or grant prospective relief from the stay so the foreclosure trustee could redo those acts. Wilmington argued that the execution, delivery, and recordation of the foreclosure trustee's deed were "ministerial acts" excepted from the automatic stay and that cause to lift the stay existed because (among other reasons) the debtor's interest in the property at the petition date, if any, was insufficient to allow her to reorganize the property in a chapter 13 case.

The bankruptcy court orally ruled that the foreclosure trustee's execution and delivery of the trustee's deed after the bankruptcy filing "involved the exercise of considerable discretion" and were therefore not ministerial acts within the meaning of the Bankruptcy Code. The court also declined to grant retroactive annulment of the automatic stay after considering the factors set forth in *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12 (9th Cir. BAP 2003).

In a memorandum decision, the court held that "the acts of executing and delivering the deed to the purchaser and the subsequent recordation of the Trustee's Deed violated the automatic stay." It also denied Wilmington's alternative request for relief to re-execute, re-deliver, and re-record the foreclosure trustee's deed.

Wilmington timely filed its notice of appeal.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and

4

157(b)(2)(A) and (2)(G). We have jurisdiction under 28 U.S.C. § 158(b)(1).

## ISSUES

1.     Did the recordation of the foreclosure trustee's deed violate the automatic stay?

2.     Did the bankruptcy court abuse its discretion when it denied Wilmington's motion for annulment of or relief from the automatic stay to allow Wilmington to record the foreclosure trustee's deed?

## STANDARDS OF REVIEW

The appellant and appellee agree that "[w]hether a particular asset is estate property and whether the automatic stay is applicable to a particular situation are conclusions of law reviewed de novo." *Groshong v. Sapp (In re MILA, Inc.)*, 423 B.R. 537, 542 (9th Cir. BAP 2010). The bankruptcy court's interpretation of state law is also reviewed de novo. *Mele v. Mele (In re Mele)*, 501 B.R. 357, 362 (9th Cir. BAP 2013). "De novo review requires that we consider a matter anew, as if no decision had been rendered previously." *Id.*

"The decision to grant or deny relief from the automatic stay is committed to the sound discretion of the bankruptcy court, and we review such decision under the abuse of discretion standard." *Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 351 (9th Cir. 1996).

To determine whether the court abused its discretion, we follow a two-step process. "First, we determine de novo whether the bankruptcy court identified the correct legal rule to apply to the relief requested." *In re*

*MILA, Inc.*, 423 B.R. at 542*.* "If it did, we next determine whether the bankruptcy court's application of the correct legal standard to the evidence presented was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)) (internal quotation marks omitted). "If any of these three apply, only then are we able to have a 'definite and firm conviction' that the district court reached a conclusion that was a 'mistake' or was not among its 'permissible' options and thus conclude that the court abused its discretion by making a clearly erroneous finding of fact." *Hinkson*, 585 F.3d at 1262.

## DISCUSSION

**A.    Recording the foreclosure trustee's deed was a violation of the automatic stay.**

**1.    Ms. Fairbanks had an interest in the property at the petition date that the automatic stay protected.**

This appeal turns largely on whether the property became property of the estate when Ms. Fairbanks filed her bankruptcy petition. If it was property of the estate, the automatic stay of § 362 protected it. If not, the automatic stay did not apply.

The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," subject to certain limited exceptions. § 541(a)(1). This provision means that any property interests that the debtor lost before filing the petition do not become part of the estate. *See Oregon v. Braker (In re Braker)*, 125 B.R. 798, 801 (9th Cir. BAP

6

1991) ("The code neither creates nor enhances the rights a debtor brings into the bankruptcy estate.").

The Bankruptcy Code looks to state law to ascertain the nature and extent of the debtor's property interests. *Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). Therefore, we look to Washington law to determine whether Ms. Fairbanks still had an interest in her home when she filed her chapter 13 petition.

The relevant statute is Revised Code of Washington ("RCW") 61.24.050. It provides:

> **Upon physical delivery** of the trustee's deed to the purchaser . . . the trustee's deed shall **convey all of the right, title, and interest in the real and personal property sold** at the trustee's sale. . . . Except as provided in subsection (2) of this section, if the trustee accepts a bid, then the **trustee's sale is final** as of the date and time of such acceptance **if the trustee's deed is recorded within fifteen days** thereafter.

RCW 61.24.050(1) (emphases added).

The first sentence of this statute provides that title to real property sold at the foreclosure trustee's sale passes to the purchaser when the foreclosure trustee delivers the deed. This is consistent with another Washington statute, RCW 64.04.010, which provides that a deed is generally necessary to pass title to real estate. Thus, the transfer to the

7

purchaser is not completed, and the owner retains at least some rights in the property, until the foreclosure trustee executes and delivers the deed.

Hence, we conclude from the first sentence of RCW 61.24.050(1) that Ms. Fairbanks retained some interest in the property that had not yet passed to the buyer when she filed her petition. That interest, whatever its nature, became property of the bankruptcy estate.

The second sentence of the statute is a "relation back" provision. It says that the sale is "final" when the bid is accepted at the sale, so long as the foreclosure trustee's deed is recorded within fifteen days after the sale. In this case, the foreclosure trustee accepted the bid before Ms. Fairbanks filed her bankruptcy petition, and the deed was recorded within the fifteen-day period. But this provision does not save the foreclosure sale. By the time the buyer recorded the foreclosure trustee's deed, Ms. Fairbanks was in bankruptcy and the automatic stay was in place. The recording of the deed violated the automatic stay because it was an "act to . . . enforce any lien against property of the estate," § 362(a)(4), and to "collect . . . or recover a [prepetition] claim against the debtor," § 362(a)(6). Acts taken in violation of the automatic stay are void. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992). Therefore, "relation back" did not occur because the predicate event—recordation of the deed—was void.

Decisions from other bankruptcy courts sitting in Washington and applying Washington law are in accord with this view. *See, e.g.*, *In re Lopez*, 596 B.R. 371, 373 (Bankr. E.D. Wash. 2019) ("The relation back to date of

8

sale clause is premised upon delivery of the deed. In other words, if the [foreclosure] trustee's deed is not physically delivered, there was no conveyance of the real property under Washington law."); *In re Betchan*, 524 B.R. 830, 834-35 (Bankr. E.D. Wash. 2015) (holding that there was no valid transfer of an interest in real property where the trustee's deed was delivered postpetition).

Wilmington cites cases holding that, under California law, the automatic stay does not block a foreclosure sale in circumstances like these. *See, e.g., Bebensee-Wong v. Fed. Nat'l Mortg. Ass'n (In re Bebensee-Wong)*, 248 B.R. 820 (9th Cir. BAP 2000); *Lucore v. US Bank, NA (In re Lucore)*, BAP No. SC-12-1604-JuBaPa, 2013 WL 2367800 (9th Cir. BAP May 30, 2013); *Hamilton v. Hernandez (In re Hamilton)*, BAP No. CC-04-1434-MaTK, 2005 WL 6960211 (9th Cir. BAP Aug. 1, 2005). But, as the bankruptcy court observed, the California statute is materially different from RCW 61.24.050. The relevant California statute, Cal. Civ. Code § 2924h(c), provides that "the trustee's sale shall be deemed final upon the acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 18 calendar days after the sale . . . ." By contrast, the Washington statute provides that title does not pass until the foreclosure trustee delivers the deed. "[S]ince the Washington Deeds of Trust Act contains a specific clause that requires physical delivery of a deed to transfer an interest in real property, Washington law requires a different result." *In re Betchan*, 524 B.R. at 835.

Wilmington cites *Laffranchi v. Lim*, 190 P.3d 97 (Wash. App. 2008), *abrogated on other grounds by MHM & F, LLC v. Pryor*, 277 P.3d 62 (Wash. App. 2012), for the proposition that, in 1998, the Washington state legislature added the fifteen-day provision found in RCW 61.24.050 "to deal with the circumstance where a borrower or grantor filed a bankruptcy action between the date of the trustee's sale and the recording of the trustee's deed." *Id.* at 101-02. We reject this argument for three reasons.

First, *Laffranchi* did not address the issue at stake here. In *Laffranchi*, the owners of the property did not file for bankruptcy. *See id.* at 98-100. The *Laffranchi* court did not have to decide the effect of a bankruptcy filing after the auction but before recordation.

Second, the *Laffranchi* court's statement about the purpose of RCW 61.24.050 was unnecessary to its decision. In that case, the purchaser at a nonjudicial foreclosure sale brought an unlawful detainer action to remove the borrower and a tenant in possession from the property but did not name the tenant as a defendant. *Id.* at 98. The court held that, because the tenant was not named as a defendant, the trial court lacked subject matter jurisdiction, so the appellate court reversed the judgment and remanded the case. *Id.* at 101. *Laffranchi*'s interpretation of RCW 61.24.050 is therefore dictum.

Third, the *Laffranchi* court relied on an incorrect description of the legislative history. After reversing the judgment for want of jurisdiction, the court went on to address an issue that it thought would likely arise on

10

remand: the date on which the purchaser became entitled to possession. *Id.* Under RCW 61.24.060, the purchaser is entitled to possession twenty days after the sale. In *Laffranchi*, the tenant argued that, if the foreclosure trustee's deed is not recorded within fifteen days after the sale, the twenty-day period begins to run not on the date of the auction, but rather when the trustee's deed is recorded. *Id.* The appellate court disagreed, stating that the fifteen-day rule was added by the legislature

> to deal with the circumstance where a borrower or grantor filed a bankruptcy action between the date of the trustee's sale and the recording of the trustee's deed. Before this amendment, a debtor could avoid the trustee's sale by filing a bankruptcy proceeding before the trustee's deed was recorded. The 15-day window provides a grace period for recording the trustee's deed, protecting the purchaser from any intervening claims of third parties.

*Id.* at 101-02.

The only source for *Laffranchi*'s statements about the legislative history is a secondary source: 27 Marjorie D. Rombauer, *Washington Practice: Creditors' Remedies–Debtors' Relief* § 3.68 (Supp. 2007-08). *See* 190 P.3d at 102 n.18. The legislative history itself contains no such statement. The Final Bill Report and other Bill Reports for the 1998 bill that added the fifteen-day relation-back provision to the statute mention bankruptcy only twice, and neither of the legislature's vague comments supports *Laffranchi*'s

assertion about the legislative history.[2]

In any event, the *Laffranchi* court chose to address the issue of when the purchaser becomes entitled to possession. We have a different issue before us: when the borrower loses all interests in the property. Thus, *Laffranchi* does not support the result advocated by Wilmington.

**2.      The exception for a "ministerial act" does not apply.**

Wilmington relies on court decisions that recognize an extra-statutory exception to the automatic stay and hold that "ministerial acts" do not violate § 362.

"[W]hen an official's duty is delineated by, say, a law or a judicial decree with such crystalline clarity that nothing is left to the exercise of the official's discretion or judgment, the resultant act is ministerial." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 974 (1st Cir. 1997). The exemption for ministerial acts should be confined "to those actions which are essentially clerical, as opposed to judicial . . . ." *Id.* at 974-75.

The ministerial act exception "stems from the common-sense principle that a judicial 'proceeding' within the meaning of section 362(a)

---

[2] The Final Bill Report states that "[r]equirements are placed on participants that enhance their accessibility and ease the mechanics of the foreclosure process. The process for giving notice is streamlined and obligations are specifically defined. When a bankruptcy is also occurring, provisions are added to minimize unnecessary delay in a foreclosure sale." F.B. Rep., S.B. 6191, 2nd Reg. Sess., at 2 (Wash. 1998). The House Report states that "[p]rocedures following the dissolving of a restraining order or bankruptcy stay on the foreclosure sale are amended." H.R. B. Rep., S.B. 6191, 2nd Reg. Sess. (Wash. 1998).

ends once a decision on the merits has been rendered. Ministerial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement do not constitute continuations of such a proceeding." *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1080 (9th Cir. 2000). In *Pettit*, the court determined that the judicial proceeding ended when the judge signed the order to release the funds. As such, "[t]he clerk of the court had no discretion as to whether to issue the check . . . and her act was, therefore, purely ministerial." *Id.*

Wilmington argues that, under RCW 61.24.050, the foreclosure trustee has no discretion, and the delivery of the deed is a ministerial act. It cites *Udall v. T.D. Escrow Services, Inc.*, 154 P.3d 882, 911 (Wash. 2007), where the Washington Supreme Court stated that "[t]he trustee's delivery of the deed to the purchaser is a ministerial act, symbolizing conveyance of property rights to the purchaser." But the term "ministerial act" has a specific definition under federal case law. For purposes of the automatic stay, an act is "ministerial" only if it involves "**no deliberation [or] discretion**." *In re Pettit*, 217 F.3d at 1080 (emphasis added). The grounds for invalidation of a foreclosure sale listed in RCW 61.24.050(2)(a) are such that the foreclosure trustee could not apply them without deliberating.[3] Unlike

---

[3] Under RCW 61.24.050(2)(a), the trustee, beneficiary, or authorized agent for the beneficiary may declare the trustee's sale and deed void up to the eleventh day following the sale if: (i) the trustee, beneficiary, or authorized agent for the beneficiary

the court clerk in *Pettit*, who merely had to issue a check without any exercise of discretion, a foreclosure trustee must exercise her professional judgment and discretion before delivering a deed under Washington law.

Further, under the statute, the trustee is not the only party that can invalidate the sale; the beneficiary of the deed of trust or its authorized agent may also declare the sale void for any of the reasons listed in RCW 61.24.050(2)(a). The ability of other parties to declare the sale void indicates that the trustee's delivery of the deed is not a ministerial act.

We thus conclude that the trustee's delivery of the deed is not a "ministerial act" as that phrase is used in the bankruptcy context.

**B.    Ms. Fairbanks retained an interest in the property sufficient to attempt reorganization under chapter 13.**

Wilmington argues that, even if Ms. Fairbanks still had an interest in her home when she filed her bankruptcy petition, her interest in the property was insufficient to allow her to reorganize the property in chapter 13. However, Wilmington's statement of the argument lacks legal basis.

First year law students are familiar with the metaphor describing property rights as a "bundle of sticks" that can be allocated among multiple people. *See United States v. Craft*, 535 U.S. 274, 278 (2002).

_____

assert that there was an error with the foreclosure sale process; (ii) the borrower and beneficiary, or authorized agent for the beneficiary, had agreed prior to the trustee's sale to a loan modification, forbearance plan, or other loss mitigation agreement to postpone or discontinue the trustee's sale; or (iii) the beneficiary or authorized agent for the beneficiary had accepted funds that fully reinstated or satisfied the loan.

Wilmington argues that a debtor must have a certain number of those sticks to address the property under a plan. But nothing in chapter 13 so provides, and legal reasoning by metaphor is a dangerous business.

There is a Bankruptcy Code provision, however, that could support Wilmington's position.  A chapter 13 debtor may propose a plan that provides for the cure of defaults within a reasonable time and maintenance of payments on any secured claim where the final payment is due after the date of the final plan payment. § 1322(b)(5). But the debtor's right to propose "cure and maintenance" treatment has an important limitation: "a default with respect to . . . a lien on the debtor's principal residence may be cured . . . **until such residence is sold at a foreclosure sale** that is conducted in accordance with applicable nonbankruptcy law." § 1322(c)(1) (emphasis added). In *Oregon v. Hurt (In re Hurt)*, 158 B.R. 154 (9th Cir. BAP 1993), this Panel considered when a property is "sold" within the meaning of § 1322(b)(5). We observed that the case law supported multiple definitions. We expressly rejected definitions that looked to state law to determine when the debtor's title or the mortgage contract was extinguished, "in the interests of establishing uniformity within the circuit . . . ." *Id*. at 159. We concluded that the right to a cure and maintenance plan is cut off at the foreclosure sale, even if the debtor retains rights in the property (such as a right of redemption or legal title) after that event under state law. *Id.* at 160.

In this case, *Hurt* establishes that Ms. Fairbanks' property was "sold at a foreclosure sale" for purposes of § 1322(b)(5) when the auction concluded, even though Ms. Fairbanks retained an interest in the property under state law until a later date. The consequence is that Ms. Fairbanks cannot confirm a plan that provides for cure and maintenance of Wilmington's secured claim that Wilmington does not accept.

This does not mean that Ms. Fairbanks' chapter 13 case is doomed. A cure and maintenance plan is only one way in which a chapter 13 debtor can address a secured claim. Ms. Fairbanks might propose a plan that provides for her to pay off the secured claim by way of a new refinancing loan, that provides for a sale of the property, or that is based on another arrangement that Wilmington is willing to accept. We cannot say whether Ms. Fairbanks could obtain confirmation of such a plan; the bankruptcy court has not ruled on plan confirmation. For present purposes, it is enough to say that the impossibility of a "cure and maintenance" plan does not automatically require the bankruptcy court to grant stay relief.

C. **The bankruptcy court did not abuse its discretion when it denied retroactive annulment of the automatic stay.**

Wilmington argues that the bankruptcy court erroneously refused to annul the stay retroactively so as to validate the execution and delivery of the deed. We disagree.

"A bankruptcy court has authority to make exceptions to, and to annul, the automatic stay under § 362(d). This authority includes

16

annulment providing retroactive relief . . . ." *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 21 (9th Cir. BAP 2003). In *Fjeldsted*, this Panel concluded "that the proper standard for determining 'cause' to annul the automatic stay retroactively is a 'balancing of the equities' test." *Id.* at 24 (quoting *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1055 (9th Cir. 1997)). We set forth factors for bankruptcy courts to consider when deciding whether to annul the automatic stay.[4] *Id.* at 25.

The bankruptcy court considered the *Fjeldsted* factors in its denial of the motion for annulment of the automatic stay. Thus, the court identified the correct legal rule. The court also based its decision on facts in the record.

Specifically, the court found that the *Fjeldsted* factors militated against annulling the stay because (1) Ms. Fairbanks' chapter 13 case was her first bankruptcy filing, (2) she had filed schedules and a plan to deal with the

---

[4] The factors are as follows: (1) the debtor's number of filings; (2) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; (3) the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser; (4) the debtor's overall good faith (totality of circumstances test); (5) whether creditors knew of the stay but nonetheless took action; (6) whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules; (7) the relative ease of restoring parties to the status quo; (8) the costs of annulment to debtors and creditors; (9) how quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct; (10) whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief; (11) whether annulment of the stay will cause irreparable injury to the debtor; and (12) whether stay relief will promote judicial economy or other efficiencies. *Fjeldsted*, 293 B.R. at 25.

mortgage on the property, (3) she acted promptly once she learned of the foreclosure sale to obtain an attorney and proceed with the bankruptcy, showing no lack of good faith, (4) the foreclosure trustee knew of the bankruptcy filing but took actions to execute and deliver the trustee's deed four days after receiving notice of the bankruptcy filing, (5) it is "relatively easy" to rescind a foreclosure trustee's deed and reconduct the sale, so the cost to the mortgage provider would likely be minimal, (6) Wilmington was adequately protected by the equity in the property, as the winning bid at the foreclosure sale exceeded the amount of the debt by $7,000 and the real estate market in the surrounding area was "very hot," and (7) Home Matters USA, ostensibly acting on Ms. Fairbanks' behalf, had in fact exacerbated her problems. The court also contrasted the harm to the parties, noting that the third-party purchaser would receive his bid back from the foreclosure trustee or lender if the sale were rescinded, whereas annulment of the stay would cause the debtor to lose her home.

The bankruptcy court identified the correct legal rule and based its decision to deny retroactive annulment of the automatic stay on facts in the record; therefore, we cannot say that its decision was an abuse of discretion.

D.     **The bankruptcy court should revisit the question of prospective relief from the automatic stay.**

The bankruptcy court denied Wilmington's request for prospective relief from the stay to allow the foreclosure trustee to redo the delivery of

the deed. It should reevaluate that request in light of this decision.

"Relief from the stay is a discretionary matter decided on a case-by-case basis." *Cannery Row Co. v. Leisure Corp. (In re Leisure Corp.)*, 234 B.R. 916, 921 (9th Cir. BAP 1999). Reasonable minds could differ with the bankruptcy court's decision. But as a reviewing court, "we may reverse a discretionary trial court factual finding [only] if we are 'left with the definite and firm conviction that a mistake has been committed'" and "must give the district court's findings deference." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Even applying this deferential standard of review, we are concerned that the bankruptcy court collapsed the examination of cause for prospective relief from stay with its analysis of retroactive annulment. Looking backwards, the bankruptcy court did not err in denying an annulment of the stay. But the court also concluded that these same factors negated a finding of cause going forward. Yet the court appears to have overlooked a crucial factor. Ms. Fairbanks filed this case to save her home. The typical method that chapter 13 debtors use to accomplish this result is a cure and maintenance plan. But our published decision in *Hurt* constrains us to hold that Ms. Fairbanks cannot confirm a cure and maintenance plan unless Wilmington accepts it.

Ms. Fairbanks's options to save her house in the chapter 13 are limited by the unavailability of the traditional cure and maintenance

19

plan. This is a significant factor as her proposed plans referenced an intent to seek yet another loan modification and stated that payments would not be made until "legal issues" and the "foreclosure issues" were resolved. The bankruptcy court should evaluate in the first instance whether the impossibility of a chapter 13 cure and maintenance plan provided "cause" for relief, especially coupled with the very small amount of equity that the bankruptcy court found, Ms. Fairbanks' poor track record of payments, and her failed attempts at loan modifications.

## CONCLUSION

We hold that the execution, delivery, and recordation of the foreclosure trustee's deed under RCW 61.24.050 was a violation of the automatic stay. We further hold that the bankruptcy court did not abuse its discretion when it denied Wilmington's motion for retroactive annulment of the automatic stay and validation of the trustee's deed. But the bankruptcy court failed to identify all of the correct legal principles when it denied Wilmington prospective relief from the stay to complete the foreclosure sale process. Accordingly, we VACATE the court's decision on prospective relief from the stay and REMAND for further proceedings on that issue, and we AFFIRM the bankruptcy court's decision in all other respects.